(January 15, 1898.)

## THOMPSON v. BRADBURY.

[51 Pac. 758.]

CONTRACT FOR CONSTRUCTING CANAL—CONSTRUCTION OF CONTRACT BETWEEN CONTRACTOR AND SUBCONTRACTOR—ESTIMATES OF ENGINEER.—Where B. agrees with T. and assignors to proceed to secure by action, lien, compromise or otherwise the best settlement obtainable for certain demands against the I. M. & I. Co. and to pay over to T. and assignors their just parts and proportions thereof, of all compensations, money or property recovered or received, in excess of the estimates of said company's engineer and interest thereon T. and others are not entitled to recover from B. until he has recovered money or property from the I. M. & I. Co. in excess of the estimates of such engineer.

SAME—LIABILITY OF CONTRACTOR TO SUBCONTRACTORS.—Under such contract the recovery of a judgment does not fix the liability of B. to T. and others. His liability is fixed by the amount or value of the property recovered or money received. If he recovers property or money exceeding in value, the estimates of the company's engineer and interest thereon, then T. and his assignors are entitled to their proportional part of such property or money.

MUST ALLEGE AND PROVE FRAUD OR MISTAKE.—Where parties agree that payments for work and materials done and furnished shall be paid upon estimates of a certain engineer, to recover more a party must allege and prove fraud or mistake on the part of such engineer.

(Syllabus by the court.)

APPEAL from District Court, Ada County.

Johnson & Johnson and W. E. Borah, for Appellant.

The evidence in the case at bar shows that the plaintiff does not represent all the subcontractors who would have an equitable interest in this property, and this fact is also disclosed by the bill of equity. This entire matter, therefore, would in its very nature be an equitable proceeding, and a bill in equity is the only proper method for determining such matters as arose in this case. The bill in equity, therefore, should have been heard and these matters settled in that proceeding. The equity matters should be first disposed of. (*Martin v. Zellerbach,* 38 Cal. 300, 99 Am. Dec. 365; *Arguello v. Edinger,* 10 Cal. 159; *Weaver v. Marshall,* 19 Cal. 447; *Estrada v. Murphy,* 19 Cal. 248;

*Downer v. Smith,* 24 Cal. 114; *Bodey v. Ferguson,* 30 Cal. 512.) The findings should be statements of the ultimate, and not of the probative, facts. They should be the statement of the ultimate facts in the controversy and the legal consequences from the facts, and should not include the probative facts. (*Mathews v. Kinsel,* 41 Cal. 512; *Smith v. Mohn,* 87 Cal. 489, 25 Pac. 696; *O'Connor v. Frasher,* 53 Cal. 435; *Bull v. Bray,* 89 Cal. 286, 26 Pac. 873.) The estimate of the company's engineer can be set aside only for fraud, or such gross error or mistake as to imply bad faith. (*Kihlberg v. United States,* 97 U. S. 398; *Martinburg etc. R. R. Co. v. March,* 114 U. S. 549, 5 Sup. Ct. Rep. 1035; *Williams v. Chicago etc. Ry. Co.,* 112 Mo. 463, 34 Am. St. Rep. 463, 20 S. W. 631; *McEvoy v. Long,* 13 Ill. 147; Wharton on Contracts, sec. 593; *Chapman v. Kansas City R. R. Co.,* 114 Mo. 542, 21 S. W. 858; *Howard Co. v. Baker,* 119 Mo. 397, 24 S. W. 200, *Snell v. Brown,* 71 Ill. 133; *Gilmore v. Courtney,* 158 Ill. 432, 41 N. E. 1023; *Trustees v. Lynch,* 5 Gilm. 526; *Mackler v. Railway Co.,* 62 Mo. App. 677; *Zimmerman v. German etc. Church,* 31 N. Y. Supp. 845, 11 Misc. Rep. 49; *McCauley v. Carter,* 22 Ill. 53; *Sweeney v. United States,* 109 U. S. 618, 3 Sup. Ct. Rep. 344; *Chicago etc. Ry. Co. v. Price,* 138 U. S. 185, 11 Sup. Ct. Rep. 290; *Mundy v. L. M. R. Co.,* 67 Fed. 633; *Lewis v. Chicago Ry. Co.,* 49 Fed. 708.)

Hawley & Puckett and John T. Morgan, for Respondent.

Appellant was bound to proceed and endeavor to secure the rights of the subcontractors and himself to the disputed amounts. The method of procedure was left to him, and he could sue in any manner or compromise as he saw fit, but proceed he must in some way. He did obtain a judgment for $170,000, and by so doing recovered over $59,000, for which he was liable to account to the subcontractors. Whether or not he received the amount of this judgment is immaterial. (20 Am. & Eng. Ency of Law, 604; *Keiney v. Ingraham,* 66 Barb. 257; Burrill's Law Dictionary, 871.) If he, Bradbury, was, as is apparently contended throughout, a trustee for the subcontractors in the effort to procure the money due, he did not show good faith or fair dealing with them, but was seeking to obtain an advantage over them in regard to the property to be applied to

satisfy the trust. This court, in a very late decision, has expressed the true rule, in a case very similar in principle to this. "Trustees must, in dealing with trust funds and with the beneficiaries thereof, show the utmost good faith and fair dealing; they can make no profit out of the trust funds, nor obtain any advantage over the beneficiaries of such fund, and a trustee cannot assert an adverse claim to funds which he receives in his fiduciary capacity." (*Vane v. Fowler,* on rehearing, decided Nov. 29, 1897.) His actions would warrant the subcontractors in treating him either as trustee or debtor as they saw fit. (*Lathrop v. Bampton,* 31 Cal. 17, 89 Am. Dec. 141; *Sharpsteen v. Freedlander,* 63 Cal. 79; *Gunter v. Jones,* 9 Cal. 643; 27 Am. & Eng. Ency. of Law, 261, note 4.) Appellant had a remedy in the court below if he considered that certain facts in issue were not found upon, and that was by a motion for additional findings and failing to take advantage of that remedy he is precluded from raising the question in this case for the first time. (*James v. Williams,* 31 Cal. 211; *Polhemus v. Carpenter,* 42 Cal. 379; *Smith v. Cushing,* 41 Cal. 97; *Warren v. Quill,* 9 Nev. 264.

This action was brought by respondent, William H. Thompson, for himself and certain other parties who had assigned certain claims to him (all of whom were subcontractors), against the appellant, W. C. Bradbury, who was an original contractor upon what is known as the "New York Canal System," situated in the counties of Ada and Canyon. It appears that said Bradbury became the original contractor for the construction of said canal system, or a large part of it, in 1890, and that the respondent, Thompson, and assignors under written contracts, became subcontractors for the construction of parts of said canal system under Bradbury. The work progressed until late in the spring or early in the summer of the year 1891, when the company owning said canal system and having the work done, to wit, the Idaho Mining and Irrigation Company, failed and became insolvent, and work ceased; at which time said company was owing the appellant Bradbury a large sum of money, which he has not been able to collect except as hereinafter set forth. Bradbury was also owing the subcontractors, the respondent, his assignors, and others large sums of money, which he adjusted

and paid as hereinafter stated. The failure of said company greatly embarrassed all parties and adjustment and settlement between the respondent and his assignors and appellant, Bradbury, was effected, and two contemporaneous written agreements were entered into between them, setting forth the terms of such settlement. Said agreements are as follows:

"This agreement made this twenty-fifth day of September, 1891, between W. C. Bradbury & Co., of Denver, Colorado, the party of the first part, herein called the contractor, and the undersigned subcontractors, for the construction of the canal and works of the Idaho Mining and Irrigation Company, herein called the subcontractors, the parties of the second part, witnesseth: Whereas, it is claimed by said contractor and said subcontractors that the estimates for work, labor and materials done, performed and furnished for the construction of the canals and works of said company, as made and furnished by the engineer of said company, or under estimates, and much less than they should in fact be, and show much less work, labor and materials than has been actually done, performed and furnished; and whereas, said company has hitherto refused to settle with the contractor on any other greater basis, and has hitherto failed to pay the amounts shown due the contractor and the subcontractors by said estimates, and there are still large sums long overdue the contractor and the subcontractors according to said estimates, and other large sums justly due them according to just and true estimates; and whereas, the contractor has been compelled to pay the subcontractors large sums over and above the amounts received from the company, and agrees to pay them an additional sum upon the execution of this agreement, and to deliver to the Boise City National Bank, of Boise City, Idaho, as trustee for the subcontractors, the promissory notes of W. C. Bradbury, payable to each of the undersigned subcontractors, for the balance due him according to his contract, and the rates and prices therein named, for work, labor, and materials done, performed, and furnished by him, according to the estimates of said engineer of said company, as shown by the books of said W. C. Bradbury & Co., and further agrees to deposit with said bank, to secure the payment of said notes, the bonds of the Colorado Land and Water Com-

pany at the rate of ninety-five per cent of their face or par value: Now, therefore, in consideration of the premises, and of the payment of said sum upon the execution hereof, and of the execution of said notes, and the pledge and deposit of said bonds, it is mutually covenanted and agreed by and between the parties hereto that said sum of money paid upon the execution hereof, and said promissory notes secured as aforesaid, are in full satisfaction, and are received by each and every subcontractor in full satisfaction and discharge, of all demands against said contractor for all work and labor done and materials furnished by the subcontractors, under contract or otherwise, for or in the construction of the canals and works of said company; but said W. C. Bradbury & Co. shall be bound, nevertheless, and according to their best judgment and discretion, to secure, by action, lien, compromise, or otherwise, the best settlement obtainable for said demand for compensation for said work, labor and materials according to a just estimate therefor, and in excess of the said estimate of the engineer of the company; and said contractor shall pay each of the subcontractors, upon demand, his just part and proportion, according to the work, labor, and materials done and furnished by him, and according to the prices stipulated in his contract, of all compensation, money, or property recovered or received for said work, labor and materials in excess of said estimates of the engineer of the company, and interest thereon. And it is further agreed that said W. C. Bradbury may make payment to said bank, trustee, upon the said notes secured by said bonds, from time to time, during the six months that said notes are to run; and upon any such payment shall receive from said bank, trustee, a proportional *pro rata* amount of the bonds so deposited, at the rate they were originally deposited. And it is further agreed that the said bank, trustee, shall hold said notes until their maturity, unless sooner paid; and if default shall be made in the payment of the same, or any part thereof, said trustee shall proceed to sell said bonds, or so many of them as shall be necessary, for the best price that can be obtained therefor, after thirty days' notice to the party of the first part, and shall apply the moneys arising from such sale to the payment of the amounts then due upon said notes *pro rata,* and, if not fully paid, shall indorse all pay-

ments made upon said notes, and deliver them so indorsed to the several subcontractors to whom they are made payable, and shall deliver all notes fully paid, and all bonds not sold, and the surplus of sale, if any, to the contractor. And it is further agreed between the parties hereto that in case the said contractor shall desire to place the said bonds in escrow at the First National Bank of Denver, Colorado, then said Boise City National Bank, trustee, shall and said second parties shall, cause said Boise City National Bank, trustee, to at once forward said bonds, and the notes for which said bonds are given, as collateral security to the First National Bank of Denver, to be held in escrow, as aforesaid, for a period of time not exceeding five months from their date, said bonds to be delivered to said party of the first part upon his payment to said First National Bank of Denver of the amount due on said notes, or, upon a payment of part of said notes, a proportional *pro rata* amount of said bonds shall be delivered to said first party. Any and all payments so to be made by the said contractor to the said First National Bank of Denver, to be indorsed upon said notes or any of them, shall be, by the said First National Bank of Denver, at once forwarded to the Boise City National Bank, together with a statement showing the amount credited to the various parties to whom such notes have been given, and said moneys shall be by the Boise City National Bank held and distributed in like manner as if the said payment had been by the said contractor to it direct. In witness whereof the parties hereto have hereunto set their hands and seals, the day and year first above written.

(Signed)   "W. C. BRADBURY & CO.,
                  "Party of the First Part.
          "McCUDDY & GIDEON,
          "W. STRAW,
          "POND BROTHERS,
          "ANNETTE & THOMPSON,
          "WALTON BROTHERS,
          "A. E. BONE,
                  "Parties of the Second Part."

W. C. Bradbury proceeded under the terms of that contract of settlement, and paid the subcontractors according to the estimates of the engineer of said company. As shown by said contract, it was claimed that the estimates of the engineer of said company were greatly under the actual amount of work done and materials furnished, and it was stipulated in said contract that said W. C. Bradbury & Co. shall be bound, nevertheless, "and according to their best judgment and discretion, to secure, by action, lien, compromise or otherwise, the best settlement obtainable for said demand for compensation for said work, labor and materials, according to a just estimate therefor, and in excess of the said estimate of the engineer of said company." Bradbury proceeded under said contract of settlement, and filed a contractor's lien upon said canal system to secure the sum of $208,775.32, which sum included $110,965.05, the sum admitted by said canal company to be due the original contractor, and also the sum of $97,810.32, which was the amount in dispute between the canal company and Bradbury, and arose by reason of the difference in the estimates of the work and materials furnished, as made by the engineer of the canal company and Bradbury's engineer. Under the agreement between the canal company and Bradbury he was to receive monthly payments upon estimates of work done and material furnished, to be made by the engineer of the company, and the subcontractors also agreed with Bradbury to accept payments on the estimates of such engineer. Suit was brought by Bradbury to foreclose said lien, and judgment recovered for the sum of $170,000 and costs, and decree of foreclosure entered. Said canal system was sold at sheriff's sale under said decree, and bid in by Bradbury for the full amount of said judgment, interest and costs, which amounted, at date of sale, to $184,000. This action was brought to recover from said Bradbury the several sums claimed to be due the respondent and his several assignors who had entered into the contract of settlement above referred to and set forth, as well as a sum claimed to be due subcontractors, Joseph & McDonald, who had not entered into said contracts, but had assigned their said claim to the plaintiff, respondent. The case was tried by the court without a jury, and judgment

was entered against the defendant. A motion for a new trial was made and overruled. This appeal is from the judgment and the order denying a new trial.

SULLIVAN, C. J. (After Stating the Facts.)—The appellant specifies numerous errors, and among them the insufficiency of the evidence to justify the findings and decisions of the court. Upon a careful examination of the evidence, we are unable to find any substantial conflict therein.

The main contention is over the proper construction of that clause of said contract of settlement which requires Bradbury to proceed, according to his best judgment and discretion, to secure, by action, lien, compromise or otherwise, the best settlement obtainable for said demand for compensation for said work, labor and materials, according to a just estimate therefor, and in excess of the said estimate of the engineer of the company, and said contractor shall pay each of the subcontractors, upon demand, his just part and portion, according to the work, labor and materials done and furnished by him, and according to the prices stipulated in his contract, of all compensation, money or property recovered or received for said work, labor and materials in excess of said estimates of the engineer of the company, and interest thereon. The respondent contends that said clause of the contract of settlement required Bradbury to proceed and secure the balance claimed to be due from the canal company, according to his best judgment and discretion, and that he did do so; that he recovered judgment for the sum of $170,000, and that the said company's canal system was sold at sheriff's sale, and the said system bid in by said Bradbury, for the full amount of said judgment and costs; that over $59,000 of that sum the appellant, Bradbury, is required to account for to the subcontractors, and pay over to them, under that clause of the contract of settlement which provides as follows: "And said contractor shall pay each of the subcontractors, upon demand, his just part and proportion, according to the work, labor and materials done and furnished by him, and according to the prices stipulated in his contract, of all compensation, money or property recovered or received for said work,

labor and materials in excess of said estimates of the engineer of the company, and interest thereon." It was expressly agreed between Bradbury, as contractor, and the respondent, Thompson, and his assignors, except Joseph & McDonald, as subcontractors, that Bradbury should proceed to foreclose the mechanic's lien he had filed against the property of said canal company, and that, if he realized therefrom any money or property in excess of the $110,965.05 and interest, the subcontractors should be entitled to their proportion of the excess. On that point the respondent testified in his own behalf as follows: "My understanding was that this amount [$110,965.05] has never been paid to Mr. Bradbury, but the subcontractors had been settled with for that amount. This property, or whatever Mr. Bradbury would get, would stand him in hand $110,965.05 of a sum which had been settled for with the subcontractors in cash or notes. We expressly agreed in the contract that there would be nothing coming to us unless he received either money or property in excess of $110,000. That was our understanding all the time this suit was going on."

Taking the testimony of the respondent above quoted as the correct construction of said last-quoted clause of the contract of settlement, the final question for decision is, Did Bradbury, under said judgment and sheriff's sale, receive money or property in excess of $110,965.05 and interest? It is contended by respondent when the appellant obtained said judgment against the canal company for $170,000 it was a "recovery" within the meaning of the terms of the contract of settlement, and that it was immaterial whether he ever received the amount of said judgment in money or property or not; that when he obtained judgment his liability to pay the subcontractors was fixed. We do not think the terms of the contract or the evidence supports that contention. The appellant was entitled to recover $110,-965.05, and retain it on his own behalf, before becoming liable under said contract of settlement to the payment of any portion of the claims of the subcontractors. If he recovered, in money or property, anything in excess of $110,965.05, then he must account for and pay over to the subcontractors their *pro rata* share of such excess; otherwise not. While it is true Bradbury

bid in said canal system at the sheriff's sale for the full amount of said judgment, no presumption of fraud or bad faith arises from that fact. In this testimony he states his reasons for doing so. There is no allegation or proof of fraud or bad faith in the foreclosure of said lien, or in bidding said property in for the full amount of said judgment. The evidence on the part of the respondent virtually concedes that said canal system was not worth the sum due Bradbury, while the evidence on the part of the defendant, or appellant, shows clearly that said property was worth much less than $110,965.05, which sum was to be paid out of the first proceeds, property or money, recovered from said canal company. Under the terms of said contract, the subcontractors who signed it are not entitled to recover until Mr. Bradbury has received money or property in excess of $110,965.05. As the plaintiff (respondent) failed to show that Bradbury had received any money or property in excess of the sum which Bradbury was to have before the plaintiff and his assignors were entitled to any sum whatever, he failed to establish a case against Bradbury, and judgment should have been in favor of Bradbury.

As to the right of plaintiff to recover under the seventh cause of action, involving the assigned claim of Joseph & McDonald, it is alleged that Joseph & McDonald, as subcontractors under the defendant, did work, labor, and furnish material for defendant and at his request, the aggregate value of which was unknown to plaintiff, but that there remained due and owing the sum of $2,000, as plaintiff is informed and believes and alleges; that prior to the commencement of this action said claim was assigned to plaintiff; that no part of said claim had been paid; that, as plaintiff is unable to state the exact amount due, prays leave, when such information is obtained, to correct the allegation as to the amount claimed to be due, if it is found to be incorrect, and prays for judgment for $2,000 and costs. Defendant denied that he owed said Joseph & McDonald any sum or amount whatever greater than ten dollars and sixty-nine cents, which sum he had tendered to them prior to the commencement of this action, and which sum defendant paid into court for plaintiff. In the trial of the case, J. J. McDonald,

of said firm of Joseph & McDonald, testified on behalf of the plaintiff, and identified the written contract between Bradbury and Joseph & McDonald, under which the work was done, referred to in the seventh cause of action. Said contract was introduced in evidence by the plaintiff. It is the contract on which plaintiff relies to recover in this action. It is stipulated in said contract that payments shall be made on the estimates of the engineer of the Idaho Mining and Irrigation Company. Said witness testified that, according to the estimates of said engineer, there was due him an agreed balance of ten dollars and eighty-five cents; and that "the difference between the company's estimates and our own estimates was $1,694.66," and that he had not been paid any part of that sum. The plaintiff also introduced as a witness T. L. Wagner, the engineer, who made the estimates for Joseph & McDonald; and he testified to the difference between his estimates and classifications and those of the engineer of the Idaho Mining and Irrigation Company, who was the engineer agreed upon to make the estimates and classifications upon which payments were to be made. There is no allegation of fraud or mistake in the estimates of the engineer upon which payments were to have been and were made. The rule is well settled that, where payments are to be made upon estimates of a certain engineer, his estimates will not be set aside, and another's taken, except for fraud or mistake. There being no allegation of fraud or mistake, and no evidence thereof, except the estimates of an engineer called in by Joseph & McDonald, the plaintiff was not entitled to recover on said seventh cause of action. It was simply the estimate of an engineer employed by Joseph & McDonald against the estimates of the engineer agreed upon by the parties, and on whose estimates payments were to be made. Had the respondent alleged and proved fraud or mistake on the part of the engineer selected by the parties to make the estimates and classifications on which payments were to be made, he would have been entitled to recover, but, on the pleading and proofs that appear in the record, he is not entitled to recover. The judgment is reversed, and the cause remanded for further proceedings in accordance with the

views expressed in this opinion. Costs of this appeal are awarded to the appellant.

Huston and Quarles, JJ., concur.