## H. FRIEDENBERG, *et al.*, v. DAVID AULD.

### *Error from Atchison County.*

1. CONTRACTS: CONSTRUCTION OF.—F., *et al.*, holding the note * therein mentioned against T., sued A. upon the following agreement: " I have in my hands freight bills in favor of Geo. W. Taylor, due on the delivery of freight loaded on the said Taylor's train at this time. When the above money is collected, I agree to take up note of said Taylor bearing date September 25, 1865, and in favor of H. Friedenberg & Co." Signed, "David Auld," and also upon two other instruments, signed by the same party. *Held :* Under such agreements it was not incumbent upon A. to force the collection of such freight bills.

2. ID: GUARANTY.—Neither did A., by entering into such agreement, guarantee the delivery of the freight for which such bills were given. Nor did he thereby guarantee that such bills should be collected.

3. ID: ACTION.—In such case the obligation of A. being conditional, it was necessary for the plaintiffs to show that the money due on such freight bills came into the hands of the defendant, or that his failure to receive it was by some fault, fraud or procurement on the part of such defendant, before a suit could be maintained against him therefor.

---

*Payable out of the specific fund.

The petition, demurred to, alleges substantially the following facts: That Taylor, on September 20th, 1865, owned and possessed a freighting ox train worth $12,000; that Taylor had it loaded at Atchison with freight for Colorado under contract with Butterfield, to be transported within a reasonable time, alleged to be ninety days; that Taylor, on the delivery of the freight, was to receive thereon $10,000, for the payment of which freight bills were issued to Taylor by Butterfield. In "outfitting" the train, the plaintiffs in error had sold Taylor goods, and on said September 20th, plaintiffs were about to, and threatened to attach the train therefor, when Auld "represented to plaintiffs that Taylor had issued to him certain of his said freight bills; that "they were then in his hands, and would be by him collected upon the delivery of the freight, and within the next ninety days, and that if plaintiff would wait on their said demand until the delivery of the freight not exceeding the ninety days, that he, Auld, would guarantee plaintiffs said demand and collect the money on said freight bills and therefrom pay plaintiffs;" that the note and due bills set forth in the opinion *in extenso*, were on such agreement executed by Taylor and an obligation of Auld endorsed on each, as in the opinion set forth, the endorsements alleged to have been a part of the agreement respectively on which they were made; that these writings were accepted by plaintiffs in error who thereupon agreed to make no attempt to interfere with the train. The petition also alleges that Auld, at the time, held $3,820 of the freight bill; that prior thereto Taylor had mortgaged the train to Auld to secure him for his liability on Taylor's bond to Butterfield, for the delivery of the freight; that Auld, during this time, until October 9th, 1865, pretended to act as

Taylor's agent and had control of the train and detained it without reason for two weeks, making it difficult to deliver the freight on time; that the note and due bills were not paid on March, 1867; that October 9th, 1865, Taylor delivered to Auld the absolute ownership of the train, including the " outfit," without plaintiff's consent and that Auld sold the same to K. & K.; that K. & K. unloaded the freight and left it two hundred miles out, near Fort Kearney, for four months, and disposed of a part of said train and used the balance in other business, and refused to deliver said freight according to the original agreement of Taylor; and that the same was not delivered until October 1st, 1866, and then in a damaged condition; A. and K. & K. have liens on said freight for the amount of the freight bills; that the freight was worth $10,000; that the same was delivered to the consignees and all liens thereon surrendered; that no effort has been made by either Auld or any other person to collect any money on said freight bills, although a reasonable time therefor has expired; that these several transfers and the disposition of the freight was for the defendant's benefit, and without the knowledge or consent of plaintiffs, but were concealed from them; that Friedenberg, since October 9th, 1865, has been a non-resident and insolvent.    A demand of payment and non-payment of the obligations is alleged, also ownership thereof in plaintiffs.

The order of the court below sustaining the demurrer, is complained of.

*W. W. Guthrie*, for plaintiffs in error.

*C. G. Foster*, for defendants in error.

*For plaintiffs in error, Guthrie*, submitted:

1.   Auld induced plaintiff in error to let the goods

go, on the promise of Auld to pay therefor out of the fund in his hands for the purpose, and then converted the fund to his own use.  Having control of the fund, his promise made him liable to the full extent suffered. *Boardman v. Florey,* 37 *Mo.*, 557; *State v. Sanford,* 15 *Ohio,* 593, *affirmed in* 18 *id.,* 500; 1 *Pars. Contr.,* 105, note *E, citing Hornly v. Bell; Clark v. Smith,* 9 *Conn.,* 379, *affirmed* 10 *id.*

2.  Auld cannot take advantage of his own wrong. *Angel on Carriers,* 175.

*Foster, for defendants,* submitted :

1  If a verbal agreement was made before the surrendering up of the goods sold to Taylor, it was void by the statute of frauds.  *Gen. Stat.,* 505; *Comp. L.,* 569.

2.  Auld had no fund in his possession, but held papers showing that he might have funds on the happening of events beyond his control.  His agreement was conditional.  The performance of the conditions, as provided in the agreement, should have been alleged.  *Chitty on Cont.,* 852, [725;] 15 *Me.,* 443; 11 *N. H.,* 170; see also, *Edw. on Bills,* 145, 279, 281, 419.

3.  The obligation is not a guaranty either of the delivery of the freight or of the collection of the money. The plaintiffs in error took, with the obligation of Auld, the risk of Taylor's delivering the freight and the payment of the money thereon.

4.  'Taylor alone, was responsible for the delivery of the freight.  He had a right to sell his train.  Auld's obligation is express; he can be held on it only in accordance with its terms.  There is no allegation that the non-fulfillment of the conditions was by the procurement or fraud of Auld.

5.  Auld's obligation was gratuitous.

*By the Court,* SAFFORD, J.

This was an action brought by the plaintiffs in error against defendant in error, and one George W. Taylor, to recover the amount alleged to be due upon three several instruments of writing, of which, together with the agreement of this defendant in error relative to the first, and his endorsements upon the other two, the following are copies :

1st.] " $700.00.    Atchison, Kansas, Sept. 20th, 1865.

" On or before ninety days after date, I promise to pay to the order of H. Friedenberg & Co. seven hundred dollars, for value received, negotiable and payable without defalcation or discount, out of bill of lading, at the office of Stebbins & Porter.

(Signed)                           " Geo. W. Taylor."

The agreement of Auld is as follows:

"Atchison, Sept. 20th, 1865.

" I have in my hands freight bills in favor of Geo. W. Taylor, due on the delivery of freight loaded on the said Taylor's train at this time.    When the above money is collected, I agree to take up note of said Taylor bearing date September 20th, 1865, and in favor of Friedenberg & Co.          (Signed)                David Auld."

2d.]                          "Atchison, Sept. 28th, 1865.

" Due on demand to H. Friedenberg & Co., sixty-two dollars and twenty cents, for value received.

(Signed)                           " Geo. W. Taylor."

. Endorsement as follows :

" I will pay the within when freight bill in my hands is collected.          (Signed)                D. Auld."

3d.]                          "Atchison, Sept. 29th, 1865.

"Due on demand to H. Friedenberg & Co., one hundred and twenty-three dollars, for value received.

(Signed)                           " Geo. W. Taylor."

Endorsed as follows:

" I will pay the within when freight bill in my hands is collected.  .      (Signed)          .          D. Auld."

To the petition of the plaintiffs, which was based · upon the instruments of writing above set forth, the defendant Auld filed his demurrer, alleging as grounds thereof, among others, " that said petition does not state facts sufficient to constitute a cause of action against said defendant." The court below sustained the demurrer, and gave judgment accordingly; whereupon the plaintiffs duly excepted, and have brought their petition in error to this court for the purpose of having the decision upon said demurrer reviewed. Here, then, is the only question presented for our consideration : " Was the judgment of the court below upon the demurrer correct?"

CONTRACTS: Construction.
As a basis *in part* for the argument in favor of the correctness of this decision, it is claimed that the petition nowhere alleges that the freight bill or bills referred to in the several agreements signed by defendant Auld, have been collected in part or in whole. An examination of the petition shows this statement to be correct; and further than this, it is alleged in the petition that no effort has ever been made by either said Auld, or any other person, to collect any money on said freight bills or bills of lading. It is clearly inferable from this, as well as from other statements in the petition, that at the time of the filing thereof there was no existing ground upon which the plaintiff might claim that defendant Auld, ever had collected or received the money due on the bills of lading. Referring, then, to the arguments signed by him, it seems to us that, in the absence of other grounds, by reason whereof to establish his liability, this omission on the part of the plaintiff was a fatal defect, and such as the facts and circum-

stances surrounding the case made it impossible for him
to supply.

By the terms of his agreements, Auld was to
pay upon the collection of certain bills; and
the plaintiff shows, as above stated, that no
such collection has ever been made. Has he in any way
avoided ·the effect of such a statement of his case? and
is it shown that such failure to collect the bills of lading
was attributable to any fault or fraud on the part of de-
fendant Auld? It is true that there is an allegation to
the effect that he detained the departure of the freight
from Atchison for the space of two weeks; but there is
no allegation, nor is there anything in the case, going to
show that he did so fraudulently, or that he had, or could
have had, any motive for delaying such departure unnec-
essarily. On the other hand, there is enough in the
petition to show that it was for his interest that the
freight should have been delivered as promptly as was
possible, to-wit: the statement that he was a surety for
the delivery of the freight, according to the conditions of
the bills of lading.. The petition also contains other
allegations, from which it is but just to infer that Auld
was not responsible for the delay referred to, but that it
was chargeable to the condition of Taylor in this, to-wit:
"that he had been utterly insolvent since the 9th ·day of
October, 1865, and had no money or property whatever."
This being true of Taylor, it furnished a most cogent
reason for the delay complained of; for how could it be
expected that he could successfully carry out his under-
taking, seeing that before the departure of the freight he
had become utterly insolvent? Here, too, it seems to us,
may be found a sufficient reason for the alleged action of
Auld in temporarily taking the train of freight into his
own possession, and delivering the same to other parties.

*[margin note: Id: CONDITIONAL: Performance of Conditions.]*

He did so to the end that Taylor's contract might be carried out, and that the beneficial results which might reasonably be expected to flow therefrom might thus be secured to any and all parties interested. It certainly seems to us that the conduct of Auld, under the circumstances, was indicative of a desire on his part to secure and hasten the fulfillment of Taylor's contract for the carrying of the freight, rather than in any manner to hinder or to defeat its execution. But giving full force to the allegations of the petition, as to the delaying of the departure of the freight by Auld, they could not be of much avail to the plaintiffs, and for several reasons: It is not shown that but for such delay the freight might have been delivered according to contract as to time, and hence it is not shown that the collection of the bills of lading was in any manner prevented or hindered thereby, which was the only question in the premises that concerned these plaintiffs. Neither is it shown that this delay operated to cause other and further delays in the transportation and delivery of the freight, or that it was in any way connected therewith. But passing from this point, there are other considerations which require attention. The petition shows that after the departure of the freight from or near Atchison, and after the 16th day of October, 1865, the defendant Auld had nothing to do with it, or the train which was carrying it; but that on the said 16th day of October, full and absolute control, possession and ownership of said train and outfit was delivered to other parties, who started it forward to its destination. The effect of this statement is to relieve Auld from all responsibility in respect of delays thereafter intervening in the transportation of the freight, and especially so since we fail to find anything in the case tending to show that up to the date of this transfer he

had acted otherwise than in the most perfect good faith towards all parties. It is to be remembered also, in this connection, that Auld did not, by his agreement with the plaintiffs, in any manner guarantee that the freight should be properly delivered, or even that it should be delivered at all; nor is it shown, or even pretended, that he ever became or was liable for such delivery, to either the owners or consignees thereof, in any other way than by his being security on Taylor's bond, as before stated. The mere naked fact that he held possession of the train which carried the freight for a few days, and then transfered it to other parties, who did deliver the freight at its destination, and for aught that appears as quickly as Taylor might or would have done it, could not most certainly effect such a result.

The several changes alleged to have taken place as to the ownership and control of the train, are not claimed to have effected the contract of Taylor for the delivery of the freight which was loaded thereon. But for aught that appears, such contract was a still subsisting one, and unchanged in any respect. It was to Taylor, then, that parties interested therein must look for its fulfillment, and whether the delivery was made by means of his own train or that of some one else could make no difference. But aside from any question of delay as to the delivery of the freight shipped under Taylor's contract, or as to what parties are responsible therefor, it is to be observed that there is no showing in the petition, by inference or otherwise, that such delay prevented or hindered the final payment of the bills of lading, or at least for a longer time than until such delivery. No insolvency of the owners or consignees is shown or hinted at; and for all that appears to the contrary, such bills might have been collected at the time they became

due, to-wit; on the delivery of the freight, and for a long period thereafter. Why such collection was not made, and the very notes sued upon in this case, long since fully paid, the petition fails to show. It might be insisted that Auld ought to have forced such collection, but we do not see upon what his obligations so to do rested, or what right these plaintiffs would have to complain if he did not. It was no part of his agreement with the plaintiffs to make or guarantee the collection of the bills of lading, and therefore we are unable to see by what rule he can be held liable because it has not been done. His promise to pay was a conditional one, and inasmuch as the petition shows that the conditions upon the happening of which he could be called upon to perform, never transpired, and fails to show that such result was by his fault fraud or procurement. It fails to make a good case against him.

We are of the opinion that the demurrer was properly sustained.

KINGMAN, C. J., concurring.


VALENTINE, J.

I cannot concur with the court in the foregoing decision, and I can scarcely say that I dissent therefrom.

I do not think that defendant Auld, by his agreement, guaranteed the collection of the freight bills mentioned in the petition; neither do I think that he bound himself to take any steps toward their collection; but I do think that if he took any steps to defeat their collection so that they were not collected, he thereby made himself absolutely responsible.

Whether the petition shows that Auld defeated their collection by any act of his is doubtful; I am inclined to

think it does, and therefore that the petition states facts sufficient to constitute a cause of action against Auld; but the court decides that it does not.

Demurrer sustained.