Argued 10 July, decided 30 July, 1907.

## LOOMIS *v.* MAC FARLANE.

91 Pac. 466.

WORDS—ASCERTAINING MEANING.

1. The meaning of a word may be varied by the text in which it is found, and if that does not fix it, resort may be had to parol testimony to ascertain the surrounding circumstances and thereby determine the intention of the parties.

MEANING OF "EARNINGS" CONSIDERED.

2. The word "earnings" may mean either gross or net receipts, but in the present instance it is used to indicate net returns.

CONTRACTS—CONSTRUCTION AGAINST PARTY USING WORDS.

3. Where the true meaning of a written instrument is doubtful, it should be construed most strongly against the party who used the doubtful terms.

GUARANTY—CONSTRUCTION—PARTICULAR WORDS—EARNINGS.

4. A contract providing that, whereas guarantor had sold all the tools used in operating a log boom, together with the management thereof, and guaranteed that vendee should be secure in continuing the management thereof until the sum specified should be earned to vendee, that therefore guarantor and his surety agreed to pay vendee such sum less the amount earned, and signed by guarantor and his surety alone, meant that the net earnings of the management of the log boom and not the gross earnings were guaranteed to amount to the sum specified.

GUARANTY—CONDITION PRECEDENT—COMPLIANCE.

5. The condition of a guaranty that the earnings from the management of a log boom would amount to a sum specified provided that the guarantee should conduct the same in a faithful, business and workmanlike manner, was complied with, where the person guaranteed gave to the management of the boom his personal attention and rendered such reasonable personal services as he was able and qualified to render.

From Multnomah: ALFRED F. SEARS, JR., Judge.

Statement by MR. COMMISSIONER SLATER.

This is a suit by L. E. Loomis against Fred MacFarlane and George L. Colwell to reform a written contract and to enforce it when reformed. For about two years immediately prior to December 1, 1904, defendant MacFarlane had been operating a log boom at Ilwaco, State of Washington, where logs were formed into rafts for the purpose of being towed by the owners to Portland in this State. The boom was owned and had been kept in repair by the Ilwaco Railway & Navigation Co., a corporation, which brought logs by its railroad from the forests to the river bank where the boom was located. MacFarlane, by the consent of the company, had been exercising the exclusive

50 Or.—— 9

management of the boom, and had been collecting from the owners of the logs 20 cents per 1,000 feet of the logs rafted, which sum he retained as his compensation for his trouble and expense. Desiring, however, to quit the business, and to go elsewhere and engage in other business, he agreed to sell to plaintiff, on the date mentioned, his rights and privileges in the rafting of logs in this boom, and his tools and appliances used in that business, for the aggregate consideration of $500, and in pursuance thereof gave to plaintiff the following contract of guaranty, with defendant Colwell as a surety:

"This Contract Note and Guaranty made and entered into by and between Fred MacFarlane and George L. Colwell, as parties of the first part, and L. E. Loomis, as party of the second part, witnesseth:    That,

Whereas, Fred MacFarlane, one of the said parties of the first part, has sold unto the said L. E. Loomis, the said party of the second part, all of the tools and appliances used in operating the Ilwaco log boom, at Ilwaco, Washington, together with the management thereof, and the handling and rafting all of the logs put therein from and after the 1st day of December, 1904, at the rate of 20 cents per thousand, including all emoluments from the said 1st day of December, 1904, in consideration of the sum of $500.00, and guarantied to the said second party that he, the said second party, shall be secure in continuing the said management thereof, at the same rate until the said amount of $500.00 less the sum of $25.00, the value of said tools and appliances, is earned to the said second party, said sum of $500.00 having been advanced and paid down cash in hand by said second party to said Fred MacFarlane, one of said first parties.

Now, Therefore, in consideration of said sum or balance of $475.00 advanced as aforesaid by said party of the second part to said Fred MacFarlane, one of the said parties of the first part, and the further consideration that said party of the second part shall conduct the said management of said log boom in a faithful, business and workmanlike manner, we, the said Fred MacFarlane and George L. Colwell, the said parties of the first part, do hereby promise and agree to pay to the said L. E. Loomis, the said $475.00, if he is prohibited from taking charge of and managing said log boom; or in case that he takes charge and manages said log boom and earns therefrom then

to pay him such part of said $475.00 less such amount as is earned therefrom.

And it is Further Understood that, in case that the present rate of 20 cents per thousand feet, board measure, for rafting logs therefrom, is cut, then this guaranty to become payable on demand for any unearned portion of said amount advanced, and in case suit or action is brought to collect any balance, then we further agree to pay in addition such amount as the court may adjudge reasonable as attorney's fees.

Dated this 19 day of December, 1904.     Fred MacFarlane.
Signed in the presence of     George L. Colwell.
J. J. Brumbach."

After setting out the foregoing contract, plaintiff alleges, in effect, that it was a part of the agreement of sale that the earnings therein referred to should be net earnings made out of the business by August 1, 1905, and that, in case the amount specified should not have been so earned by that time, Mac-Farlane was to pay to plaintiff that amount or the deficiency, whatever it may be; that by inadvertence and mistake of the parties that part of their agreement was omitted from the writing evidencing their contract; that plaintiff had fully performed his part of the contract; that the necessary expense of conducting the business exceeded the income up to August 1, 1905, and plaintiff had derived therefrom no income whatever; that he has demanded of defendants the payment to him of the sum of $475, which has been refused, and that $75 is a reasonable attorney's fee to be allowed him, under the terms of the contract. He prays for a decree reforming the instrument in the two particulars mentioned, and, when reformed, that it be enforced by granting him a money judgment against defendants. Defendants by their answer admit the execution and delivery of the written contract set out in the complaint, and also that it was a part of the agreement of sale that the amount of the earnings mentioned was to be ascertained by the parties on August 1, 1905; but they deny that the earnings were to be net earnings, as well as deny all other allegations of the complaint. They affirmatively allege that the written instru-

ment set forth in the complaint evidences the exact agreement had and entered into by the parties in every particular, excepting that it was understood that the $475 mentioned should be earned on or before August 1, 1905, and that, from the business sold him, plaintiff had earned and collected between December 1, 1904, and August 1, 1905, more than the sum of $500, and by reason thereof he has received fulfillment of the terms of the contract sued on; that plaintiff was inexperienced and incompetent and intrusted his business to others when he should have managed the same himself, and give the business his personal attention; and that he was grossly extravagant and made large and unnecessary expenditures of money for the hire of labor, and that the loss which he may have sustained was due to his own incompetent and extravagant management. The reply traverses all the affirmative matter of the answer, except as alleged in the complaint. Upon the taking of testimony the court found in accordance with plaintiff's allegations, decreed the reformation of the instrument, and entered judgment accordingly, from which defendants appeal.

AFFIRMED.

For appellants there was a brief over the name of *Johnson & Duff,* with an oral argument by *Mr. George Arthur Johnson.*

For respondent there was a brief and an oral argument by *Mr. Thomas Nelson Strong.*

Opinion by MR. COMMISSIONER SLATER.

The answer admits the necessity of reforming the instrument set forth in the complaint so that it will require the amount of earnings therein guarantied shall be ascertained on August 1, 1905; but it denies that the $475 guarantied by the contract were to be net earnings, and also denies that the business was carried on by plaintiff in a faithful, business and workmanlike manner, as required by the contract. The equitable jurisdiction to reform the instrument in that respect is, therefore, admitted, but it remains for us to determine the extent of the relief to be otherwise granted. In order to determine the

rights of the parties and grant the relief to which we think they are entitled, in the view we take of the matter in controversy, it will not be necessary to reform the instrument further than to the extent admitted by the pleadings.

1. The word "earnings" may mean either gross or net receipts of a business, or of the income of a laborer, according to the connection in which it may be used, and which of these two meanings is to be given the word as used in this contract is a question of construction. If the meaning to be given it is not ascertainable from the context, and if it is doubtful what was meant and intended by the parties, resort may be had to parol testimony to ascertain the surrounding circumstances and from such facts ascertain the intention of the parties, which must prevail.

2. The instrument on which the suit is based recites: (1) That MacFarlane has sold some tools and appliances in operating the Ilwaco log boom, and the handling of all logs put therein after December 1, 1904, in consideration of $500 paid to him; but it does not appear from the testimony of the parties that MacFarlane had any rights of property in the boom, which were subject to assignment and transfer to another, and the only rights of property transferred were the tools and appliances, valued by the parties in the sum of $25. (2) That MacFarlane guarantied to plaintiff that he should be secure in continuing the management of the boom at the same rate of compensation the former had been receiving, until the amount of $500 less the sum of $25, the value of the tools and appliances, is earned to plaintiff. The language "to plaintiff" evidently means something more than that the earnings are to be merely the gross receipts of the business, but that the amount earned is to be personal to him, that is, a profit after paying all other charges. In the contract proper, however, the defendants had agreed "to pay him [plaintiff] such part of said $475 less such amount as is earned therefrom." It might be proper, also, at this point, to mention the fact that this instrument recites that MacFarlane had sold the property de-

scribed to plaintiff, and that the latter had advanced and paid to the former the sum of $500; but the evidence on the part of plaintiff shows, and it is not denied by the defendants, that, while the terms of the contract of sale had been previously agreed upon, yet the sale was not consummated, and the money was not paid over to MacFarlane until the instrument in question had been signed and delivered, so that the contract in suit was made in contemplation of the contract of sale.

In construing the word "earnings," as used in the statute of Wisconsin, exempting 60 days' earnings of a debtor for his personal services from execution and attachment, when necessary for the support of his family, Mr. Chief Justice Dixon, in *Brown* v. *Hebard*, 20 Wis. 344 (91 Am. Dec. 408), says: "It is not easy, perhaps, to determine the precise application of this word as used in the statute. I think a correct definition to be the gains of the debtor derived from his services or labor without the aid of any capital. If the debtor has no capital, and no credit contributing to increase his profits, except the credit arising from the labor or services in which he is presently engaged, and out of the proceeds of which his obligations on account of such labor or service are to be discharged, then I think his net receipts or gains from such labor or services may fairly be accounted 'earnings.' If, for example, the man whose business it is to dig a well, sink a mine, erect a house, run a raft of lumber or a ferry-boat, or to perform any of the numerous kind of work in which the assistance of others is necessary, employs others, as he must do, to assist him, and who are to be paid as he himself is paid, out of the proceeds of the work, it seems to me that what remains after the others are paid must be regarded as his 'earnings.'" See, also, *Campfield* v. *Lang* (C. C.) 25 Fed. 128.

3. The instrument in suit, it will be observed, is not signed by plaintiff, but by the defendants only, and hence the language thereof is the language of the defendants, and this fact is of some importance in construing the instrument. "Where the true import and meaning of a written instrument is doubt-

ful, and the intention of the parties cannot be determined from its language, the right doctrine is that it should be construed most strongly against the person using the doubtful language, and in favor of him who has been misled and advanced his money upon it: *Barney* v. *Newcomb,* 9 Cush. 46; *McFadden* v. *Friendly,* 9 Or. 222.

4. Upon the face of the instrument, then, it seems to us, the parties intended net profits when using the word "earnings." But if there was any doubt remaining upon that point to be resolved by a resort to parol testimony, the conclusion is irresistible from the consideration of defendant MacFarlane's evidence alone that such was the intendment of the parties. He says: "I guarantied that if he went in there he would make $500 in that seven months, provided he done it in a businesslike manner." And it appears from all of the evidence that it was understood by the parties when making their contract the plaintiff was to have an assurance of a return of his money from the net proceeds of the business, and we so interpret their contract.

5. It remains to be considered whether plaintiff has conducted the management of the business "in a faithful, business and workmanlike manner," as provided in the contract so as to entitle him to recover. Just what this phrase means is somewhat uncertain. Defendants contend that plaintiff should have attended to the rafting of the logs himself, and that it was reasonably possible for a person skilled in that work to have rafted all the logs delivered there in the seven months without the aid of others, and they have offered testimony that tends to support that claim. But the contract does not require him to do that. He has agreed, or rather defendants have required of him, as a condition to the guaranty, that he shall "conduct the management" of the boom, which does not necessarily mean that he shall do the work himself. He has complied with that condition when he has shown that he gave to the management of the boom his personal attention and by rendering such reasonable personal services thereabouts as he was

able and qualified to give. Plaintiff was not an experienced raftsman and for about two years preceding the date of the contract had been a clerk or agent for the Ilwaco Railway & Navigation Co., at Ilwaco. MacFarlane had been acquainted with plaintiff during all that time, and prior to the making of the contract plaintiff made no representations to him that he was a raftsman. Under these circumstances, then, MacFarlane had no right to assume that plaintiff was skilled in rafting logs; and, in fact, he did not act on that assumption. for he says he did not know whether plaintiff was skilled in that work or not.

The testimony shows quite clearly that plaintiff assiduously attended to the care of the boom, giving it his undivided personal attention, and performing such work as he was able to do, and, in fact, during the last three months he performed all of the work himself. During the first four months of the period, when he needed assistance, he employed the same men MacFarlane had employed to assist him when he turned over the management of the boom to plaintiff on December 19, 1904, and he paid them the same wages. So that we think the business was managed by plaintiff in a faithful and reasonably businesslike manner. It is not claimed by defendants that the work was not done in a workmanlike manner, or that any loss was occasioned by any neglect or deficiency in that respect. It appears from the evidence that at the time of the transfer the railroad company was under a contract to deliver 2,000,000 feet of logs at the boom each month until August 1, 1905, and that was the reason the contract of guaranty was made to terminate at that time. But, soon after the making of the contract, the railroad company failed from some unexplained reason to make delivery of more than about 500,000 feet, on an average, per month. This was the cause of plaintiff failing to make the anticipated profits. The evidence shows that the total receipts were $534.55, while the total expense was $747.55, that is, the actual operating expense exceeded the entire income by $247.14.

It follows that the decree of the circuit court should be affirmed.                                    AFFIRMED.