JAMES H. QUINN *vs.* DANIEL J. HAYDEN.

Essex.    November 6, 1914. — November 24, 1914.

Present: RUGG, C. J., HAMMOND, SHELDON, DE COURCY, & CROSBY, JJ.

*Contract*, Construction, In writing.   *Equity Jurisdiction*, For an accounting.
    *Words*, "Proceeds."

In a suit in equity for an accounting for the proceeds of a joint enterprise
    under a contract in writing, by the terms of which certain buildings were to
    be bought by the defendant and were to be torn down by the plaintiff and
    the materials were to be disposed of by him and the proceeds deposited in a
    bank in the name of the defendant, and, after the defendant had paid the
    expenses incurred in the tearing down and removal of the buildings and the
    sale of the materials, the balance of the proceeds was to be divided in equal
    shares between the plaintiff and the defendant, it appeared that when the
    contract was made the plaintiff for many years had had experience in tear-
    ing down old buildings and selling the materials, and that the defendant had
    had no such experience.  The defendant contended that out of the proceeds
    from the sale of the materials he first should be paid the amount of money
    advanced by him to buy the buildings, and that, if this was not stipulated
    for in the agreement in writing, he had the right to show that it was agreed
    to orally between the parties.  *Held*, that under the agreement the "pro-
    ceeds" which were to be divided equally between the parties were to be
    subject only to the cost of tearing down, removing and selling the buildings,
    and that nothing was to be deducted for the purchase price of the buildings;
    and that, the language of the contract being clear and no fraud or mistake
    being alleged, the terms of the contract could not be varied by evidence of
    any previous or contemporaneous oral agreement.

BILL IN EQUITY, filed in the Superior Court on June 10, 1913,
for an accounting by the defendant for the proceeds of a joint
enterprise to tear down certain buildings in Lynn that had been
purchased by the defendant and to dispose of the materials, as
described in the opinion, in accordance with the terms of a con-
tract in writing between the plaintiff and the defendant dated
April 18, 1913.

The defendant in his answer, among other things, alleged that
it was agreed between the parties that the cost of the buildings
first should be paid out of the receipts from the buildings, and
that the balance after the payment of expenses should be divided
between the plaintiff and the defendant in equal shares, and

further alleged that such payment for the buildings, if not justified under the written agreement, was justified under an oral agreement made between the parties, and that such payment was proper and necessary in the carrying on of the business of the joint enterprise.

The case was referred to James W. Sullivan, Esquire, as master. He filed a report, and the parties agreed that the facts found by him were true. Later the case came on to be heard before *Hamilton,* J., who found in accordance with the agreement of the parties that the findings of the master were true, and at the request of the parties reported all questions of law arising from the agreed facts for determination by this court.

*H. A. Bowen,* (*S. Parsons* with him,) for the plaintiff.

*W. E. Sisk,* for the defendant.

RUGG, C. J. The plaintiff for many years had had experience in tearing down old buildings and selling the materials. The defendant had had no such experience, but had been in different kinds of business. Before April 8, 1913, an owner of buildings and fixtures formerly used for the manufacture of shoes offered them for sale and removal. The plaintiff and the defendant made an arrangement whereby the latter, after borrowing $2,600, purchased the buildings and fixtures, taking a bill of sale in his name. They thereupon entered into an agreement respecting the demolition and sale of the buildings, which were torn down and sold.

The only question now presented is, whether the defendant is entitled to reimbursement for the $2,600 contributed by him before the proceeds are divided between the two. The determination of this question rests upon an interpretation of the agreement. This agreement recites that the defendant has purchased the buildings, and then follows the language set out in the footnote.*

---

* "The said parties hereby agree to and with each other that said buildings are to be demolished and the lumber and all material removed from the premises upon which they stand, or are to be sold in their present condition as the parties deem best, and the proceeds of the sale of such buildings or any part thereof are to be divided in the manner hereinafter set forth between the parties hereto, it being understood and agreed that the said purchase by the said Hayden of the said Thompson-Crooker Shoe Company is for the

This agreement relates to a single business venture. It appears to have been drawn with care and to state in detail the rights and duties of the parties. The only source of revenue within their contemplation was the sale of the buildings and the materials in or composing them. The word "proceeds" is used consistently throughout the instrument to designate the money received. Provision is made touching all disbursements to be made from such "proceeds." These include only the cost of tearing down, removing and selling the buildings. No reference is made to their initial purchase price and the words used are not sufficiently extensive in meaning to include that item. Further stipulation is made to the effect that all such "proceeds"

---

benefit of the said Hayden and the said Quinn. All costs of tearing down or removing said buildings or any part thereof and all costs necessary for the prompt sale of said materials shall first be deducted out of the proceeds received from the sale of said buildings or any part thereof, and the balance deposited in the Manufacturers National Bank of said Lynn in the name of the said Daniel J. Hayden.

"Each party hereto is to use his best endeavors to sell and dispose of said buildings or any part thereof, and agrees that the proceeds of said sale shall be deposited as aforesaid. All bills for the sale of materials under this agreement shall be made out in the name of said Hayden, and the said Hayden hereby agrees to and with the said Quinn that he will keep correct account of all expenses and disbursements, and upon the final disposition of all the property acquired under the purchase by him of the said Thompson-Crooker Company that said proceeds shall be divided as follows: The said Hayden shall pay all and whatever expenses may have been incurred in the tearing down or removal of said buildings or any part thereof or in the sale of the same, and after such payments the balance, if any, shall be divided in equal shares between the said Quinn and the said Hayden.

"The said Quinn hereby agrees that he will immediately turn over to the said Hayden all and whatever sum or sums of money he may receive by reason or on account of the sale of any part of the property above described to the said Hayden. The said Quinn shall have charge of the tearing down and removal of said property and in general direct such work.

"It is also mutually agreed and understood that in case the proceeds of the sale of said property shall warrant the same that each of said parties shall draw therefrom not more than twelve dollars per week until the final disposal of all of said property, when the balance shall be divided as above set forth.

"It is also mutually agreed and understood that neither of said parties shall have any claim against the other or against the proceeds of the sale of said property other than the twelve dollars per week as above set forth."

shall be deposited in a designated bank in the name of the defendant. They can be withdrawn only for the purposes specified, by the defendant, who is required after making the authorized deductions to divide the balance equally between himself and the plaintiff. The natural import of these provisions is confirmed by the subsequent clause for the withdrawal by each party of the weekly stipend to an amount not exceeding $12, if warranted by the state of the business, followed by the express and definitive prohibition of any claim by either party against the other or the proceeds outside those explicitly stated. These precise provisions do not permit the interpretation, as matter of construction, that the defendant shall be reimbursed for money paid for the purchase of the buildings out of the proceeds of the sales.

The contract as thus construed is not unreasonable or unconscionable. The adventure may have been of sufficient magnitude to induce the defendant to contribute his capital against the superior special experience of the plaintiff in the hope and expectation of an ultimate profit.

Decisions relied on by the defendant like *Livingston* v. *Blanchard*, 130 Mass. 341, *Whitcomb* v. *Converse*, 119 Mass. 38, and *Moley* v. *Brine*, 120 Mass. 324, plainly are distinguishable, for there "profits" was the word to be interpreted and applied to partnership affairs. That word, when used without qualification or limitation, implies a deduction or repayment of capital. The definition of "proceeds" given in *Commonwealth* v. *Alexander*, 185 Mass. 551, in another connection, is not applicable to a contract of such detailed and unequivocal terms as that here presented.

The evidence offered by the defendant, tending to show that before the contract was signed the parties agreed that he should buy the buildings with money raised on his personal notes, and that he should be reimbursed therefor out of the funds gained in the project before any division, rightly was excluded. To receive such evidence would have violated the familiar rule that a written contract, executed freely, without fraud or mistake, cannot be modified or varied by oral evidence of previous and contemporaneous agreements touching the subject. These are presumed to be merged in the written instrument, which alone

expresses the rights and obligations of the parties. As has been pointed out, there is no ambiguity or uncertainty as to the meaning of the words of this contract. *Perry* v. *J. L. Mott Iron Works Co.* 207 Mass. 501.

Nor is the subject as to which this proffered evidence relates outside the scope of the contract. It refers to the deductions to be made from the fund before division, which is one of the matters covered by the contract.

No question is raised on this record as to mutual mistake in the terms embodied in the contract, nor has any cross bill been filed by the defendant.

The plaintiff is entitled under the master's report to $2,016.71 from the receiver and to $254.70 from the defendant. A decree of this tenor may be entered in the Superior Court, neither party to recover costs.

*Ordered accordingly.*