(No. 6255. March 18, 1936.)

FURST & THOMAS, a Copartnership Composed of FRANK
E. FURST and FRED G. THOMAS, Respondent, v.
E. G. ELLIOTT, as Administrator With the Will An-
nexed of the Estate of ALICE J. CORTNER, Deceased,
Appellant.

[56 Pac. (2d) 1064.]

492

S. D. Fairchild, for Appellant.

Martin & Martin, for Respondent.

GIVENS, C. J.—February 11, 1931, Mearl M. Cortner entered into the following contract with respondent to act as dealer of its products in the vicinity of Oroville, California, and to guarantee his payments for goods sold him on credit the appended guarantee contract was executed by his mother:

"SALES AGREEMENT.

"This agreement made and entered into at Freeport, Illinois, by and between Frank E. Furst and Fred G. Thomas, co-partners, doing business under the name of FURST & THOMAS of Freeport, Illinois, and Mearl M. Cortner of Oroville, California hereinafter called the Dealer witnesseth:

"That, whereas the aforesaid Dealer wishes to engage in the business of retailing the products handled by Furst & Thomas, buying from them on credit, and agrees to pay Furst & Thomas at their office in Freeport, Illinois, their regular wholesale prices for all products bought from them, in installments satisfactory to Furst & Thomas out of the proceeds of his business until his account is balanced, therefore,

"Furst & Thomas agree, upon acceptance of this agreement, to sell to the said Dealer their products on credit at their regular wholesale prices, f. o. b. Freeport, Ill., or at their option their nearest Branch Warehouse, unless prevented by fires, strikes, accidents or other causes beyond their control, but it is expressly understood and agreed that Furst & Thomas shall have the right to limit the amount of credit

to be extended to the said Dealer and to refuse to fill his orders in whole or in part if in their judgment his payments on account are not satisfactory. If he remits cash with order he shall receive a discount of five percent (5%) from their current wholesale prices if his account is balanced. The Dealer, as a matter of good faith and to show what the receipts of his business are from week to week, agrees to send Furst & Thomas each week an itemized record of his business on forms provided for that purpose by them.

"To assist the Dealer in building up a profitable business, Furst & Thomas agree to give him advice and suggestions based on their experience and on the methods of other successful Dealers retailing their products in a similar way, but it is expressly understood and agreed that nothing contained in such advice and suggestions shall be binding upon the Dealer nor shall be construed as in any way altering or modifying the terms of this agreement.

"Either party shall have the right to terminate this agreement by giving written notice to the other party and upon its termination from any cause by either party the Dealer agrees to pay within two months the balance due Furst & Thomas on account; provided that if the Dealer fails to make regular remittances or attempts to avoid settlement of his account the balance shall become immediately due and payable at the option of Furst & Thomas. If the said Dealer wishes to sell back his stock of products he may ship them to Furst & Thomas to point designated by them, transportation charges prepaid promptly after termination of this agreement, and Furst & Thomas agree to pay him for such products (sample cases and discontinued products excepted) when received by them in good condition, in original, unopened bottles and packages, their current wholesale price but not more than the price originally charged the said Dealer for such products, less 5% to cover the cost of checking, handling and putting the products back into stock and if on final accounting any balance is due the Dealer to pay it promptly.

"It is expressly understood and agreed between the parties that this agreement as signed by them constitutes the sole and entire agreement between them and no modification of this agreement shall be binding unless in writing and signed by all parties hereto.

"It is subject to acceptance by Furst & Thomas at their home office in Freeport, Illinois and shall be construed as an Illinois contract. When so accepted it shall immediately be in force and effect and unless sooner terminated shall expire December 31, 1934.

"Dealer Sign Here in Ink MEARL M. CORTNER.

"The undersigned sureties, having acquainted ourselves with the terms and conditions of the above agreement in consideration of the payment of $1.00, receipt whereof is hereby acknowledged, and in further consideration of Furst & Thomas extending credit to the above named Dealer do jointly and severally guarantee payment to Furst & Thomas for all products sold by them on credit to him whether such products are for resale, for advertising or for other purposes, hereby waiving acceptance and all notice, and we further agree that the written acknowledgment of his account by the said Dealer shall bind us and that any extension of time or change in the conditions of payment for goods sold to him on credit shall not release us from liability hereon. We further agree that after two months from the termination of the above agreement by either party and the non-payment of his account by the said Dealer, this guaranty shall become absolute as to the amount then due from him and we shall be primarily liable for the payment of same and upon demand we promise to pay the amount to Furst & Thomas at their office in Freeport, Illinois, without any proceeding being taken by them against the said Dealer.

"Sureties Sign Here in Ink Occupation P. O. Address
 Mrs. Alice J. Cortner Nursing 1211 North 20th
 street Boise, Ida.

"This agreement is hereby accepted at Freeport, Illinois this 11th day of February 1931.

 "FURST & THOMAS,
 "By F. G. Thomas."

Thereafter Mearl M. Cortner being in arrears as to payments, the contract was, as provided for therein, terminated July 14, 1931, by this letter sent Mr. Cortner, a copy thereof being sent as an enclosure to his mother, Mrs. Alice J. Cortner:

"Dear Mr. Cortner:

"As your business is unsatisfactory we today exercise our right under your agreement and notify you of the termination of the agreement. The customary notice goes out to your surety.

"Enclosed you will find instructions for packing and returning these products. We would advise you to send these back at once as our experience in helping men close up their business indicates that a dealer gets along far better settling up his account providing he returns his stock at once.

"Be sure and send us bill of lading with the list of products. We enclose necessary supplies.

"Yours truly,

"FURST & THOMAS."

and this letter written directly to the surety:

"Dear Mrs. Cortner:

"You are hereby notified that we are today terminating the agreement of Mr. Mearl M. Cortner of Bangor, California, which you signed as surety and we, therefore, will discontinue selling him our products. His business was not satisfactory.

"Final settlement of his account will be due two months from date according to the terms of the agreement.

"We are writing to Mr. Cortner today asking him to return his remaining stock of products for credit on account. When they are received and credited to the account, we will send you a statement showing the balance due, payment of which you will be responsible for in the event he fails to pay it himself.

"We thought best to promptly advise you of our action in this connection.

"Yours truly,

"FURST & THOMAS."

Considerable correspondence ensued with regard to the balance due from Mr. Cortner, and no settlement thereof being made, and Mrs. Cortner having died February 7, 1933, a claim was filed against her estate by respondent as follows:

"THE UNDERSIGNED, Creditor of Alice J. Cortner, deceased, presents its claim against the estate of said deceased, with the necessary vouchers for approval, as follows, to-wit:

Estate of ALICE J. CORTNER, Deceased

To FURST & THOMAS Dr.

"To goods and merchandise sold by Furst & Thomas, a copartnership, of Freeport, Illinois, composed of Frank E. Furst and Fred G. Thomas, under a contract with Mearl M. Cortner, and a contract of guaranty of the account of said Mearl M. Cortner with the deceased, Alice J. Cortner, a copy of which sales agreement and guaranty, together with an affidavit of the correctness thereof by Frank E. Furst, a member of said copartnership, is attached hereto marked 'Exhibit A' and made a part of this claim and a copy of the account of said Mearl M. Cortner, payment of which was guaranteed by said Alice J. Cortner under said contract of guaranty, is attached hereto marked 'Exhibit B' and made a part hereof. That under said contract of guaranty the estate of Alice J. Cortner, deceased, is indebted to the claimant herein, as follows:

Principal sum ....................$617.74
Interest on said principal sum from September 14, 1931 to July 26, 1933, at the rate of 7% per annum ................... 80.76

Total indebtedness .............$698.50

"That said sales agreement between the claimant and Mearl M. Cortner was terminated on July 14, 1931 and the balance of his account thereunder, as shown above, has been due and unpaid since said date, and two months after the said 14th day of July, 1931, towit: On September 14, 1931, the contract of guaranty of the said Alice J. Cortner, under the terms thereof, became absolute as to the amount then due from the said Mearl M. Cortner and became a primary liability of the said guarantor, Alice J. Cortner."

having attached thereto and as part thereof a copy of the sales agreement above mentioned, the affidavit of Frank E. Furst as follows:

"STATE OF ILLINOIS
COUNTY OF STEPHENSON,—SS.

"FRANK E. FURST, being first duly sworn, deposes and says; That he is one of the co-partners of Furst & Thomas, a copartnership of Freeport, Illinois, composed of Frank E. Furst and Fred G. Thomas, whose foregoing claim is here-

with presented against the estate of, and to E. G. Elliott, as Administrator with the Will Annexed of the estate of, Alice J. Cortner, deceased. That the amount thereof, to-wit:

Principal ............................$617.74
Interest—Sept. 14, '31 to July 26, '33...... 80.76

Total ............................$698.50

is justly due said claimant. That no payments have been made thereon which are not credited and that there are no off-sets to the same to the knowledge of said affiant.

"FRANK E. FURST.

"Subscribed and sworn to before *this* this 7th day of August, 1933.

"F. G. Llewellyn,
"Notary Public
"Residence: Freeport, Illinois."

together with an itemized statement of the invoices covering merchandise shipped Mr. Cortner amounting in the aggregate to $695.24, and showing cash payments or returned merchandise in the amount of $77.50, leaving a balance of $617.74. This claim was, August 25, 1933, rejected by appellant herein, the duly appointed and acting administrator of Mrs. Cortner's estate, whereupon the action herein was instituted November 9, 1933, resulting in judgment for respondent for the full amount of its claim.

Appellant urges his general demurrer was erroneously overruled because he contends the contract specified a particular fund, namely, the proceeds of Cortner's business, only out of which payments were to be made by Mr. Cortner to respondent, and that the complaint thus did not state a cause of action since it did not allege the existence of any proceeds; that the contract should be strictly construed against respondent as the party who prepared it, relying on *Hoover v. Odle,* 31 Ariz. 147, 250 Pac. 993, *Payne v. Neuval,* 155 Cal. 46, 99 Pac. 476, *George Tritch Hardware Co. v. Donovan,* 74 Colo. 350, 221 Pac. 881, and *Loomis v. Mac-Farlane,* 50 Or. 129, 91 Pac. 466; and that an ambiguous contract should be construed against the party who produced it, relying on *Ries v. Pacific Fruit & Produce Co.,* 50 Ida. 140, 294 Pac. 336, *Globe Nat. Bank v. McLean,* 84 Colo. 207, 269

Pac. 9, *Jordan v. Madsen,* 69 Utah, 112, 252 Pac. 570, and *Camp v. Carey,* 152 Wash. 480, 278 Pac. 183.

The rule is well recognized and supported by authorities that if a contract provides for payment out of a particular and specific fund and from no other source, plaintiff to recover must allege and prove that such a fund exists. (*Martin v. Martin,* 5 Cal. App. (2d) 591, 43 Pac. (2d) 314; *Bagley v. Cohen,* 5 Cal. Unrep. 783, 50 Pac. 4; *Thompson v. Bradbury,* 5 Ida. 760, 51 Pac. 758; *Toombs v. Consolidated Poe Min. Co.,* 15 Nev. 444; *Freidenberg v. Auld,* 5 Kan. 452; *Snell v. Cheney,* 88 Ill. 258; and see 13 C. J. 631, sec. 701.)

There are three possible interpretations of the contract: first, as contended for by respondent that as a matter of law the sales agreement and guarantee portion thereof, considered together, contemplated and required unequivocal payment not in any way limited by whether there were proceeds of Mr. Cortner's business; second, that as a matter of law exactly the opposite construction is to be placed on the contract, and that payment was to be made and guaranteed only out of the proceeds of the business, and if there were no proceeds it was in effect a joint venture and no payments due; third, that the contract was ambiguous and uncertain, in which event its interpretation would present a question of fact to be determined by the trier of fact, in this instance the court, because a jury was waived. Respondent by pleading the contract and nothing more must be held to have considered that the first or third was the proper construction, and as against a general demurrer the question is whether or not its pleading the contract *in haec verba,* if either construction of the contract be correct, stated a cause of action. *Dittemore v. Cable Milling Co.,* 16 Ida. 298, 101 Pac. 593, 133 Am. St. 98, considered a somewhat similar situation, where suit was brought to recover a judgment by plaintiff as trustee in bankruptcy of the estate of one J. H. Danner for merchandise sold under a writ of execution, the court saying at page 301 of the Idaho Report:

"It is further argued that the complaint is insufficient, in that it alleges the amount received by the sheriff under each execution, but does not show the amount deducted by

the officer as his fees and the net sum received by the defendant. The complaint does allege the specific amount received by the officer from the sale on each execution, and that allegation is immediately followed by a paragraph in this language: 'That the proceeds of said sale were paid by said sheriff to said defendant.' The 'proceeds' must necessarily mean all that was received from the sale; otherwise it would have said 'net proceeds,' or some other and similar expression. The word 'proceeds' is the synonym for *product, income, yield, receipts, returns.* We think only one conclusion can reasonably be drawn from this allegation, and that is that the defendant herein received the entire sum for which the goods sold, amounting in all, from both sales, to the sum of $421.64. It is not out of place to observe here that if litigants do not understand the meaning of such allegations and feel that they may be deceived or misled by them, or that they are ambiguous or uncertain, they are given ample remedy by the statute, through special demurrers, to reach such uncertainties and ambiguities and thereby require the pleader to be more specific definite and certain.''

amplified as to the meaning of the word "proceeds" in *Salisbury v. Spofford,* 22 Ida. 393, 126 Pac. 400, as follows:

'' . . . . The proceeds of a sale means the entire proceeds . . . . ''

Thus the complaint may be construed to state a cause of action on either the first or third theories, it being unnecessary where the contract is set out *in haec verba* to plead its legal effect (*Elbring v. Mullen,* 4 Ida. 199, 38 Pac. 404), and where a complaint states any cause of action that will put defendant on his defense it is not subject to general demurrer. (*Village of Sand Point v. Doyle,* 11 Ida. 642, 83 Pac. 598, 4 L. R. A., N. S., 810; *Swinehart v. Turner,* 38 Ida. 602, 224 Pac. 74.) The general demurrer, therefore, was properly overruled.

Appellant also urges that the complaint was deficient because it did not allege performance by respondent of the part of the contract stipulating that respondent would '' . . . . assist the Dealer in building up a profitable business, Furst & Thomas agree to give him advice and sugges-

tions based on their experience and on the methods of other successful Dealers retailing their products in a similar way, but it is expressly understood and agreed that nothing contained in such advice and suggestions shall be binding upon the Dealer nor shall be construed as in any way altering or modifying the terms of this agreement.''

In the first place it is to be noted that this paragraph stipulated that this provision should not be construed as altering or modifying the terms of the agreement, and appellant has not shown that this is such a condition precedent that an allegation of performance thereof was necessary to state a cause of action. (13 C. J. 725, 726, sec. 848; *Elson v. Jones,* 42 Ida. 349, 245 Pac. 95.)

Coming now to the substantive matter in the interpretation of the contract, the point to be determined is whether this contract did limit the payments Mr. Cortner was to make for the merchandise which he purchased from respondent on credit and which was guaranteed by Mrs. Cortner now sought to be charged against her estate, and if so whether there were any proceeds. If it did not so limit them, the debt was recoverable as a general obligation.

The word ''proceeds'' is one of equivocal import, and of great generality. It does not necessarily mean money, its meaning in each case depending very much upon the connection in which it is employed and the subject matter to which it is applied. (*Phelps v. Harris,* 101 U. S. 370, 25 L. ed. 855, at 858; *Appeal of Thompson,* 89 Pa. 36; *Dow v. Whetten,* 8 Wend. (N. Y.) 160; *Haven v. Gray,* 12 Mass. 71, at 76; *Wheeler & Wilson Mfg. Co. v. Winnett,* 3 Neb. Unof. 293, 91 N. W. 514, at 515.)

The word ''proceeds'' is of such general signification that resort must usually be had to the context, and to the subject matter to which it relates, in order to ascertain its meaning; and where a stock of goods was transferred to mortgagees at an inventory price which was credited on the mortgage, and the mortgagees, on the transfer being set aside, were ordered to account ''for the proceeds of the property transferred to them,'' the word ''proceeds'' included the price agreed to be paid for the goods, and did not refer only to the

amounts realized from sales of the property. (*Armour Packing Co. v. London,* 53 S. C. 539, 31 S. E. 500.)

The provision in the contract for division of the "proceeds" of sales does not mean "net proceeds" of the sale contemplating the deduction of expenses. *Barnum v. White,* 128 Minn. 58, 150 N. W. 227, 151 N. W. 147, the court saying:

" . . . . Whatever may be the meaning of the term 'proceeds' as ordinarily used, we are clear that the use of that term could not require that there be deducted from plaintiff's share any expense which the contract by its other terms required defendants to pay."

Assignment by a tobacco grower of "all proceeds" of crop held to include common stock in warehousing corporation forming a part of co-operative marketing association, substituted for proceeds, amounts set aside as dividends thereon, and unused portion of one per cent of proceeds deducted for commercial purposes, since "proceeds" included everything that was or might be due from tobacco or sale thereof. (*Carpenter v. Dummit,* 221 Ky. 67, 297 S. W. 695.)

Instructions to broker to sell grain and deposit the proceeds to plaintiffs' account held insufficient to show that plaintiffs instructed the sale to be for cash, since the word "proceeds" does not necessarily mean cash or money. (*Murray & Patterson v. Gordon-Watts Grain Co.,* 216 Mo. App. 607, 260 S. W. 513, at 514.)

"Proceeds" in L. O. L., sec. 227, subd. 7, means a sum of money paid, or the acknowledgment of a debt created, to evidence the consideration for a sale of exempt personal property. (*Blackford v. Boak,* 73 Or. 61, 143 Pac. 1136, 1137.)

Under a contract giving the ranch manager certain compensation only if such amount could be made out of net proceeds, the term "proceeds" embraced, not only money received from actual sales of produce, but the increase in value of stock or produce. (*Shields v. Rancho Buena Ventura,* 38 Cal. App. 696, 177 Pac. 499, 501; and see *Quinn v. Hayden,* 219 Mass. 343, 106 N. E. 1002.)

 From the above authorities, the rule deducible as to what definition is to be given the word "proceeds" is that the intention of the parties governs and is to be gathered

from all of the surrounding facts and circumstances, and while the insufficiency of the complaint as not stating a cause of action may be urged at any time, it does not appear that during the course of the trial this point was interposed by objections to the pleadings or evidence, or is tenable against respondent because, except as the allegations of the complaint are generally denied the answer contained no allegation setting up affirmatively that there were no proceeds from the business, hence no fund from which Mr. Cortner in the first instance was required to pay respondent, or any fund from which in the second instance Mrs. Cortner guaranteed payments, and there is this affirmative showing not only negativing such defense but affirmatively acknowledging liability by Mr. Cortner and Mrs. Cortner, without reliance on the proposition that it was only out of the proceeds that payment was to be made. When the deposition of Mr. Thomas was being taken in California, Mr. Cortner voluntarily appeared and when respondent was introducing in evidence invoices and bills showing shipments of merchandise to him, made this statement:

"MR. CORTNER: One moment: In order to expedite business, I will say that we have no objections to the entries placed here on the invoice of the amount. We acknowledge they were received, so you won't have to go through that whole pile. Is that what you intend to do?

"MR. RODE: Mr. Cortner, you are willing to stipulate that goods in the sum of $695.24, wholesale price, were received by you from Furst & Thomas, and that you paid on account thereof the sum of $77.50?

"MR. CORTNER: To expedite matters, I do."

It is true that at the trial objection was made to this testimony as follows:

"MR. ELLIOTT. (At the trial): I ask that the statement by Mr. Cortner,—both statements by Mr. Cortner and the statement by Mr. Rode, counsel for the plaintiff, be stricken, for the reason that they are incompetent, irrelevant, and immaterial, and can in no manner bind or affect the rights of the defendant in this case.

"GENERAL MARTIN. (At the trial): If your Honor please, as the pleadings show, he is the man who entered

into the contract and received the goods, and his admission that he received those goods, and his admission that he owed that much, would be, I should think, an admission against this defendant. In other words, Mrs. Cortner, whom Mr. Elliott represents, was surety for Mearl M. Cortner, and to pay for the goods he bought if he didn't pay for them. Now, his admission that he bought them, that he received them, that he owed that much on them, seems to me clearly admissible as a matter of evidence.

"THE COURT: The objection is overruled, and the motion to strike is denied."

but no error is assigned because of the overruling of the objection, though appellant asked to have the entire deposition suppressed and not admitted, which point we will advert to later, but proceeding, Mr. Cortner again stated as follows:

"MR. CORTNER: I wish to note an objection at this time. Inasmuch as the items have been acknowledged by the *plaintiff* in the amount of $694.24, he has paid the sum of $77.50, it is not necessary to go through that list, and therefore may be stricken out.

"MR. ELLIOTT. (At the trial): If the Court please, I move that that statement of Mr. Cortner be stricken out, for the reason that it's extraneous matter, and made by a person not authorized to appear, and for the reason it is immaterial and incompetent.

"THE COURT: Denied."

and again no error is predicated on the court's ruling.

Conceding without deciding that these statements were not binding on Mrs. Cortner as to her interpretation or understanding of the contract or her intention in connection therewith, we have this further evidence with regard to her understanding: In a letter introduced in evidence, written by Mrs. Cortner to her son (Respondent's Exhibit 69), she stated that she had received the registered letter notifying her of the termination of the contract (Respondent's Exhibit 66, *supra*), but she made no mention in that letter that payment could only be out of the proceeds of her son's business. Again under date of July 2d, she wrote respondent directly with regard to her financial condition, stating she had received a letter from her son "telling me (Mrs. Cortner) not to worry

that *with what was on his books and the stock on hand he thought he could make it"* (i. e., payment). (Italics ours.) "Soon after I received another letter saying he feared he could not in the 60 day limit," and nowhere in the letter did she urge in substance or otherwise the point of interpretation now contended for by appellant. The record shows that Mr. Cortner retained and refused to return to respondent the unsold goods and merchandise which he had received and not paid for, shown by a letter to him from respondent dated June 26, 1931 (Respondent's Exhibit 63) and his letter to respondent of August 29, 1931 (Respondent's Exhibit 72), to amount to approximately $600, also Mr. Cortner stated in his letter of August 29th, that he had 448 customers and *"I have enough on the books with reliable people to more than cover the amount you demand."* (Italics ours.) Therefore if we construe the contract to require payment only out of the proceeds there is competent evidence to support the conclusion that there were such proceeds. There is also competent evidence to support the conclusion that neither appellant nor Mr. Cortner understood the contract to limit payment out of such restricted and specified source.

■ Appellant further argues that because it was an Illinois contract it is to be construed by the Illinois law, and that the complaint and showing was insufficient because the Illinois law was not plead nor proved. It is true the contract so provided but unless a party relies on the foreign law there is no necessity for pleading or proving it (59 C. J. 1202, sec. 743), and neither party herein has indicated that he relies in any way whatsoever on the Illinois statutes.

■ Appellant urges that the deposition of Mr. Thomas should be suppressed because it was participated in by Mr. Cortner, an unauthorized person and stranger to the proceedings. Mr. Cortner's participation in addition to that above referred to consisted in his attempted stipulation with appellant that the notary might be out of·the room when the deposition was taken, but the record does not disclose that the notary was out of the room and the certificate of the notary is sufficient to authenticate the deposition; thus no prejudicial conduct is shown by the record. (18 C. J. 724, sec. 324, note 51; *Patrick & Co. v. Nurnberg,* 21 N. D. 377, 131 N. W. 254, at 256; *O'Leary v. Schoenfeld,* 30 N. D. 374,

152 N. W. 679, at 683; and see *Indiana & Illinois S. Ry. Co. v. Wilson & Son,* 77 Ill. App. 603; *Hughes v. Humphreys,* 102 Ill. App. 194; *Kansas City, Ft. S. & M. R. Co. v. Stoner,* 51 Fed. 649, at 656; *Galveston, H. & S. A. Ry. Co. v. Morris,* 94 Tex. 505, 61 S. W. 709, at 710; *Squier v. Mitchell,* 32 S. D. 342, 143 N. W. 277; *Helgerson v. Mitchell,* 32 S. D. 595, 144 N. W. 117; *Little Bros. v. Brock,* 91 S. C. 549, 75 S. E. 176.)

Appellant also urges that respondent failed to prove that Mrs. Cortner signed the guarantee agreement. This testimony was given by Mr. Thomas without objection:

"Q. And did anyone also sign that agreement as surety?

"A. Mrs. Alice J. Cortner.

"Q. Signed as surety?

"A. Yes."

There are also the letters of Mrs. Cortner in which she tacitly admits she signed the guarantee. (22 C. J., 303, sec. 340; 13 C. J. 769, sec. 965.)

Appellant urges the claim filed in the probate court in connection with Mrs. Cortner's estate was deficient. The only defect pointed out was that it did not refer to or state the Illinois law. Since respondent did not rely on the Illinois law as above stated herein, it was unnecessary to incorporate it in the claim. A claim against an estate need not state all the facts with the precision and detail required in a complaint, but it is sufficient to indicate the nature and amount of the demand in such a manner as to permit the executor and the probate judge to act advisedly upon it. (*McGrath v. Carroll,* 110 Cal. 79, 42 Pac. 466; *Pollitz v. Wickersham,* 150 Cal. 238, 88 Pac. 911; *Thompson v. Koeller,* 183 Cal. 476, 191 Pac. 927.)

The claim was not contingent because the terms of the agreement definitely fixed the liability of the guarantor as of two months after the termination of the contract which termination preceded the filing of the claim by more than the required length of time. The claim was sufficient in form. (Ross on Probate Law and Practice, p. 534, sec. 340; Bancroft, Probate Practice, pp. 1421, 1422, sec. 802; 24 C. J., 348, sec. 986; 11 R. C. L. 194, sec. 214; *Standiford v. Cantrell,* 87 Cal. App. 736, 262 Pac. 800; *University of*

*Southern California v. Bryson,* 103 Cal. App. 39, 283 Pac. 949 at 955.)

Judgment affirmed. Costs to respondent.

Holden and Ailshie, JJ., concur.

Budge, J., did not participate.

Morgan, J., deeming himself to be disqualified, did not sit with the court nor participate in the opinion.

Petition for rehearing denied.