WEST PORTLAND HOMESTEAD ASS'N *v.* LOWNSDALE, Assignee.

*(District Court, D. Oregon.* August 21, 1883.)

CLOUD ON TITLE.

In 1871 sundry persons who were owners in common of a tract of land, laid out thereon a Carter's addition to Portland, and partitioned the same among themselves by deed, designating therein the blocks and lots allotted to each, among which was block 67, allotted to Charles M. Carter. The deed of partition was recorded, but the plat was not. Shortly after, L. F. Grover and wife, who were parties to this partition deed, laid out an addition to this Carter's addition, on a tract of land belonging to said wife, and lying immediately south of said first survey, and numbered one of the blocks therein 67; said Charles M. Carter having, in the mean time, changed the designation of the first block 67 to that of park block, and set it apart for public use as such; and thereupon the parties to both surveys united in executing a common plat of them as Carter's addition to Portland, in which the first block 67 was designated as a park block, and the second one by that number. In 1875 Grover and wife conveyed block 67 in the second survey to the plaintiff, and on February 19, 1878, the defendant was appointed by this court assignee in bankruptcy of the estate of said Carter, and within less than a year before the commencement of this suit set up a claim to the property, as such assignee, under the deed to Carter, and was proceeding to sell the same. The bankrupt never claimed the property, and the plaintiff and his grantors have always paid the taxes thereon. *Held,* (1) that it was a case of latent ambiguity in the deed to Carter arising out of the subsequent circumstances, which the plaintiff was entitled to explain by showing that it was not the intention of the parties thereto to convey the second block 67, and that it appeared from the facts that the plaintiff had the legal title to the property, and was not precluded by the circumstances from asserting it in this suit; (2) that the defendant, under the circumstances, has color of title to the property, and if he were allowed to sell it, he would thereby cast a cloud upon the plaintiff's title, and therefore equity will restrain him by injunction from so doing; (3) that if section 5057 of the Revised Statutes is applicable to the case, this suit is not barred by it, because it is only brought to prevent the threatened wrongful sale, and therefore the right to sue did not accrue until the defendant undertook to sell the premises, and did some act in pursuance of such purpose.

Suit in Equity to prevent a cloud on title.

*C. P. Heald,* for plaintiff.

*George H. Williams,* for defendant.

DEADY, J. This suit was commenced on March 27, 1883, and on July 20th the court sustained a plea to the bill of the limitation contained in section 2 of the bankrupt act, (section 5057, Rev. St.,) *ante,* p. 205.

It has since been heard and submitted on a demurrer to an amended bill, filed July 24th, which presents the case in quite a different aspect.

The plaintiff is a corporation formed and existing under the laws of Oregon, and brings this suit to restrain the defendant, as assignee of Charles M. Carter, from selling block 67 in Carter's addition to Portland as the property of the bankrupt.

It appears from the amended bill that on and prior to September 7, 1871, Joseph S. Smith, Charles M. Carter, T. J. Carter, and L. F. Grover were the owners in common of the then unsold portion of the

donation of Thomas and Minerva Carter, in township 1 south, of range 1 east of the Wallamet meridian,—the same being bounded on the south by the east and west subdivision line of section 4 of said township,—and as such owners, in August, 1871, surveyed and laid out Carter's addition to Portland thereon, and designated the blocks, lots, and streets thereof by numbers and names on a plat that they then executed and acknowledged, but did not record, and by deed duly recorded then partitioned the premises among themselves, designating therein, according to said plat, the lots and blocks allotted to each; that on said plat there was a block designated 67, and the same was conveyed, by the deed so executed, to Charles M. Carter as "block 67 in Carter's addition to Portland," but said survey and plat were afterwards so changed "by said Carter and others" that the said block has ever since been known as a park, and not as block 67; that at the time of said partition said parties had no interest in any land south of said east and west subdivision line, and there was then no other plat in existence than the one aforesaid, to which they could have referred in the execution of said partition deed; that in October, 1871, said Grover, and Elizabeth, his wife, caused a certain tract of land, belonging to said Elizabeth and adjoining the aforesaid tract on the south, to be surveyed and mapped into blocks, lots, and streets, and designated by numbers and names as a part of Carter's addition to Portland, among which was a block numbered 67; that afterwards said Grover and wife, together with the parties to the said partition, made a general plat of both said additions to Portland, and duly executed the same and caused it to be recorded on November 4, 1871; that the block designated as 67 in the first survey is marked on said plat as a park, while the block now known and designated thereon as number 67 is the one surveyed and mapped by Grover and wife on her land, subsequently to the making of said partition deed to Charles M. Carter, and was not in existence, as such, at the date thereof.

It is also alleged in the bill that said Grover block 67 was no part of the consideration in or for said partition; nor was it the intention of the parties thereto to refer to it or comprehend it therein, but that the block numbered 67 in the deed to Carter was another parcel of land included in the tract owned in common by said parties, and not the parcel now known as block 67, in Carter's addition to Portland; and "that it is by accident" that the description of the block conveyed to Carter answers to that now known as block 67, in said addition.

On August 11, 1875, said Grover and wife, for a valuable consideration, conveyed the block now known as 67 to the plaintiff, by a deed which was duly recorded; and it is alleged that the plaintiff, in obtaining such conveyance, acted in good faith; that at the date of such conveyance, and prior to the one to Charles M. Carter, said Grover and wife were in the exclusive possession of said block, and paid the taxes thereon, and since said conveyance to the plaintiff it

has been and now is in the like possession, and has paid the taxes thereon; that said Carter was never in the possession of the premises, nor ever paid any taxes thereon, or claimed any title or interest therein, or contracted any debt upon the faith of such title or interest, and that no judgment creditor of said Carter was deceived by the fact that a block 67 was contained in the deed to him; and that Grover and wife, when they gave the number 67 to the block in question, acted in good faith, relying upon the records of the county, and the understanding that such designation, as applied to the parcel of land first numbered 67, had been abandoned.

The bill further alleges that the defendant, as assignee aforesaid, and by reason of the premises, now claims to be the owner of the block in question, and is about to sell the same at public auction, and will so do unless restrained by this court, and will thereby cast a cloud upon the plaintiff's title thereto, to its manifest wrong and injury; that the defendant never set up any claim to the block in question, to the knowledge of the plaintiff, prior to the publication of the advertisement giving notice that he would sell the same on March 28, 1883.

The causes of demurrer are:

(1) The suit is barred by section 5057 of the Revised Statutes; (2) the plaintiff is chargeable with notice of the deed to Carter prior to the execution of the one to it; (3) the allegations as to the discovery of the plaintiff's right of suit are uncertain and insufficient; (4) there was no accident or mistake in the execution of the deed to Carter; (5) the parties to the deed to Carter mutually abandoned the first block 67, and dedicated it to public uses, and substituted the second block 67 therefor; and (6) there is no equity in the bill.

The identity of block 67 in Carter's addition is affected by this state of things, but the apparent confusion is neither the result of accident nor mistake. On the contrary, the separate acts which, taken together, have caused this ambiguity were deliberately intended by the parties, acting upon a correct conception of the facts pertaining to each, but apparently without consideration for, or attention to, their collateral or incidental effect.

An accident is an unforeseen or unexpected event, of which the party's own conduct is not the proximate cause. Pom. Eq. Jur. § 823. But the designation of the Grover block 67 by the plaintiff's grantors, while their deed was on record to another block 67 in a Carter's addition, was the immediate cause of this confusion.

A mistake is an erroneous mental conception that influences the will and leads to action. Pom. Eq. Jur. § 839. But the Grover block was designated 67, upon the impression, as was the fact, that the similar designation of a block in the first survey had been abandoned, and that parcel of land set apart as a park; and the conveyance of said block to Carter, as block 67, was made and accepted under the impression, as was also the fact, that there was then a block of that

number in the first survey, and not elsewhere. But if the parties, at the time of the execution and filing of the final plat of Carter's addition, were not aware or did not notice that the designation of this block thereon, under the circumstances, as block 67, might produce confusion of identity and lead to a conflict of claims concerning the same, they may be said to have made a mistake, but only such a mistake as arises from that inattention to known or knowable facts and their consequences as constitute negligence. Against such a mistake equity affords no relief. Pom. Eq. Jur. § 839.

Neither is there any doubt that upon the facts stated the plaintiff is the owner of the block in question, and has the legal title thereto. The conveyance to Carter of block 67 in the first survey did not affect the title to block 67 in the second survey, and would not even if the second 67 had been then in existence. It was this block that was conveyed to Carter, and not the number 67, wherever else it might be used or applied. This block was a particular parcel of ground, then designated 67, within the limits of the first survey, and not elsewhere.

The bill distinctly alleges that such was the intention and understanding of the parties to the conveyances, and the fact that the block 67 in the second survey was not then in existence is itself satisfactory evidence of that fact.

The claim that the parties substituted block 67 in the second survey for the one of that number in the first survey is not supported by the facts. Nothing of the kind is alleged in the bill, nor do the facts stated therein warrant any such inference. On the contrary, it appears that the first 67 was changed to a park block before the other was surveyed or designated; and that upon the final plat of Carter's addition, which was made up from the previous surveys of the two tracts, the first one was accordingly designated as a park block and formally dedicated to public use, while the latter was designated as private block 67.

But the making and recording of this plat did not operate to convey any block therein to Carter. That might have been done by marking the same on the plat as a donation or grant to him. Or. Laws, p. 777, § 3. And the very fact that this was not done is evidence, under the circumstances, that it was not within the contemplation of the parties. Nor does it appear probable that Mrs. Grover would surrender a block of her land to Carter in consideration of a dedication by him of another block to a public use that was of as much or more benefit to the rest of the parties to the plat than to her. And if there ever was any agreement or understanding between the parties, short of a legal conveyance, that in consideration of the dedication by Carter to a public use of the first block 67, he should receive the second block 67, it did not affect the legal title to said second block. And if it is sufficient to raise an equity in favor of Carter that the defendant can assert here, the burden is upon him to allege and prove it.

Neither is the plaintiff estopped to assert its right to the premises. True, it took the conveyance from Grover and wife with the notice of the prior conveyance to Carter, and it is also true that the latter deed appeared to convey block 67 in Carter's addition, and this was then the only block on the plat that answered that description. But it was no further affected by the notice of this deed than were the grantors therein by the deed itself; and if they could show, as certainly they could, that the block described therein as 67 was not this 67, but another, so can the plaintiff. Besides, the deed to Carter also showed upon its face that it was executed before this plat was, and therefore there was no ground for the inference that the former referred to the latter, or that the 67 mentioned in the one was the 67 mentioned in the other.

Upon the whole, this is simply a case of latent ambiguity in the deed to Carter, concerning the subject-matter of the conveyance, produced by circumstances subsequent as well as collateral to the deed. In such a case it is always competent to show, by evidence *dehors* the deed, the actual intention, in this respect, of the parties thereto. 1 Greenl. Ev. § 297; 2 Whart. Ev. §§ 956, 957; *Piper* v. *True*, 36 Cal. 614.

The effect of this ambiguity is to give defendant, as assignee of Carter, color of title to the premises, under which, it appears, he will, if not restrained by this court, sell the same, and thereby cast a cloud upon the title of the plaintiff. For it seems that although the second block 67 was a part of the separate property of Mrs. Grover, and therefore could not even appear to be affected by her husband's conveyance of the first block 67, that she signed the deed with her husband and his co-tenants, conveying the first 67 to Carter, so that upon the record Carter appears to have received the elder conveyance from Grover and wife to block 67.

That a sale of this property, under these circumstances, by the assignee would cast a cloud over the title of the plaintiff, and that, therefore, the court has power, by injunction, to prevent such sale, is a proposition well supported by the authorities. *Pixley* v. *Huggins*, 15 Cal. 132; *Coulson* v. *Portland*, 1 Deady, 487; *Ewing* v. *St. Louis*, 5 Wall. 418; *Lick* v. *Ray*, 43 Cal. 88; High, Inj. §§ 269–272.

The test of what is a cloud on title is shortly stated by Mr. Justice FIELD, in *Pixley* v. *Huggins, supra,* as follows: "Every deed from the same source through which the plaintiff derives his real property must, if valid on its face, necessarily have the effect of casting such cloud upon the title."

The plaintiff is clearly entitled to the relief sought unless the suit is barred by the lapse of time. It is the real owner of property. Carter never had any interest in it, nor made any claim to it. By reason of circumstances occurring after the conveyance to him, he came to have color of title to the premises, but nothing more. Nor is there any special ground on which his assignee, as the representa-

tive of his creditors, can make any better claim to the property than he could.    No one of them, so far as appears, stands in any such relation to the property as a purchaser in good faith, and for a valuable consideration; and if he does, it is not perceived on what ground he could assert any right thereto as against the true owner, unless it be an estoppel by conduct arising out of the fact of the plaintiff's grantors executing and allowing a plat of Carter's addition to go upon the record with a block designated thereon as 67, when they knew, or may be presumed to have known, that a prior deed of theirs to Carter's for a block with a similar designation, in what purported to be Carter's addition, was already on record.    But even then the fact that the deed was prior in point of time to the plat, and could not, therefore, be supposed to refer to it, may be a sufficient answer to this suggestion.

Neither is the right of the plaintiff to maintain this suit barred by lapse of time.    Section 5057 of the Revised Statutes enacts:

"No suit, either at law or in equity, shall be maintainable in any court between an assignee in bankruptcy and a person claiming an adverse interest touching any property or rights of property transferable to or vested in such assignee unless brought within two years from the time when the cause of action accrued for or against such assignee."

But it is not clear to my mind that this case falls within this section.    This is not a suit to establish or annul an adverse claim to this property, but a suit to prevent the doing of an act concerning the same which, under the circumstances, will cast a cloud upon the plaintiff's title.    It is a suit to prevent the defendant from committing a threatened wrong.    True, the right to maintain it rests upon the ownership of the plaintiff, and the threat to do the alleged wrong proceeds from a claim of ownership in the defendant which is adverse to that of the plaintiff.

Suppose, however, the assignee commits a trespass upon premises in the apparent ownership and possession of the plaintiff, as by entering thereon, and cutting and carrying away growing timber or grain; and suppose such entry is made in pursuance of a claim of ownership or interest adverse to the plaintiff,—does this section apply to an action to recover damages therefor?    I think not; and that the section is confined in its operation to cases where the suit is brought directly to establish or annul an adverse claim to property vested in the assignee, or to recover the possession of that to which he is entitled as the representative of the creditors of the bankrupt.    But suppose the section does apply, within what time must an action for the trespass be brought?    In two years from the date of the adverse claim or the circumstance out of which it is alleged to arise, or the commission of the trespass?    Certainly, within the latter period.    Any other construction would involve the absurdity of a cause of action being barred by lapse of time before it arose.    So in this case.    Admitting that it falls within the section, when did the cause of suit accrue?    At the

time the circumstances occurred which gave Carter the color of title to this property, on the strength of which his assignee is now threatening to commit the wrong complained of, or from the time when the proceeding for the sale was commenced, or first came to the knowledge of the plaintiff? In my judgment, there can be but one answer to this question.

As I have said, this is a suit to prevent a wrongful sale of the premises, which will have the effect to cast a cloud upon the plaintiff's title, and the right to maintain it could not have accrued until something was done by the defendant to manifest his intention or purpose to make such sale. The mere fact that the assignee had the same show of right to make this sale five years ago as now, is not material. He never had the legal right to sell, and the plaintiff could not have maintained a suit to enjoin him from doing an illegal act that he had not attempted, and, for aught that appeared, never would. If this was a suit to annul or set aside the deed to Carter, so far as block 67 is concerned, upon the ground that it constituted a cloud on the plaintiff's title to the existing block 67, the statute, if applicable, would doubtless be a bar to the relief sought. But this suit goes no further back than the wrongful attempt of the defendant to sell, and is limited in its object to the prevention of that wrong.

The case of *Bailey* v. *Glover*, 21 Wall. 346, is not in point. That was a suit by the assignee to set aside a fraudulent conveyance by the bankrupt, and of course the cause of action—the right to have such conveyance set aside—accrued as soon as it was made. The conveyance passed the title, subject to the right of the creditors to have it set aside for fraud, and the interest to the grantee therein was adverse to the creditors from the date of the transaction, and would, by lapse of time, ripen into an absolute estate in the premises. *In re Estes*, 6 Sawy. 460; [S. C. 3 FED. REP. 134.]

The demurrer is overruled.