## UNITED STATES *v.* GIBBONS.

### APPEAL FROM THE COURT OF CLAIMS.

Argued October 23d, 1883.—Decided November 12th, 1883.

*Contract—Limitations.*

1. Where the language of a contract is susceptible of two meanings, the court will infer the intention of the parties and their relative rights and obligations from the circumstances attending the transaction.

2. The parties contracted for the rebuilding of a shop at the Norfolk Navy Yard, which had been destroyed by fire. The specifications provided that "the foundation and the brick walls now standing that were uninjured by the fire will remain and will be carried up to the height designated in the plan by new work." After taking down so much of the old wall as was supposed to be injured, the government officers directed parties to examine the then condition of the walls before bidding on the specifications. Defendant in error did so, then bid, and his bid was accepted. *Held*, that the United States through its officers was bound to point out to bidders the parts of the walls which were to enter into the new structure, and that this was done by the act of dismantling a portion and leaving the rest of the wall to stand.

3. Payments under the contract were to be made in instalments and the balance when the work should be entirely completed. The contract also contemplated extra work. *Held*, that the cause of action for such extra work arose on the entire completion of the work.

The principal question in this case related to the proper construction of a building contract between the parties, entered into May 22d, 1866, the United States acting by Joseph Smith, chief of the bureau of yards and docks, under the authority of the Navy Department, for the repair of the entrance buildings and carpenter-shop at the Norfolk Navy Yard, which had been destroyed by fire in 1861, at the outbreak of the civil war.

The contract required the appellee to furnish, at his own risk and expense, all the materials and work necessary for the repairs of the buildings according to the plans and specifications annexed, the entrance buildings to be entirely completed and delivered within one hundred and twenty days, and the carpenter-shop within thirty days, from the date of the contract. A gross sum was to be paid for the work on each, partial payments to be made during the progress of the work upon the certificate of the superintendent, and final payment when the work should be entirely completed, according to the plans and specifications, "and to the satisfaction of the party of the second part." It was declared in the contract that "no extra charge for modifications will be allowed unless mutually agreed upon by the parties, and no changes or modifications mutually agreed upon by the parties to this contract shall in any way affect its validity."

The specifications for the entrance buildings contained the following clause, upon which the case turned:

"The foundations and the brick walls now standing that were uninjured by the fire will remain and be carried up to the height designated in the plan by new work."

The contract was made in pursuance of proposals, invited by an advertisement, in which it was stated that "persons desiring to bid must necessarily visit the yard and examine the present condition of the works, and can there see the plans and specifications to enable them to bid understandingly."

The findings of fact by the court of claims bearing on this point were as follows:

"III. At the outbreak of the late rebellion these buildings mentioned in the contract were burnt, but portions of the walls were left standing. Prior to the proposals for work, an inspection of these fragmentary walls, so left standing, had been made by the officers of the government in charge of the works, and those portions of them deemed unfit to form a part of the permanent structure were taken down, and those parts which were considered uninjured and proper to be built upon were left

standing for that purpose.  After the agents of .the government had prepared the walls, retaining the portion which the civil engineer of the navy yard in charge of the work supposed might be used in the new structure, the chief of the bureau of yards and docks invited the examination of bidders by the advertisement annexed to the petition, and the claimant, by his agent, visited and saw the walls so standing.  At the time the claimant, by his agent, so visited the yard he was shown the walls by a quarterman acting under the civil engineer of the yard.  The claimant's agent asked if those walls were to stand.  The quarterman replied that they were, so far as he knew, and that Mr. Williams, the master mason of the yard, and Mr. Worrall, the civil engineer of the yard, had said that they were to stand. (But it does not appear that the quarterman was authorized to make such representations to the claimant's agent.)  And the civil engineer likewise represented to the claimant's agent that the portion of the walls then standing would remain and be used in the new work.  After the claimant's agent had so visited the yard and been shown the walls, the claimant made his bid.

" IV.  After the claimant had begun work under his contract, it was discovered that a portion of the walls still standing had been so injured by the fire as to be unfit for building a superstructure thereon.  Commodore Hitchcock, commanding the naval station, thereupon ordered that the walls be further razeed, and pursuant to his orders, about one-third of the portion then standing was taken down by the claimant before proceeding to build.  The effect of this second razeeing was that the claimant had to substitute new brick-work for that so removed; and the additional cost of construction thereby thrown upon him was the sum of $4,050; and for it he has received no remuneration additional to the price named or consideration expressed in the contract.  It does not appear that at the time Commodore Hitchcock ordered the walls to be further razeed the defendants' officers made any pretence or claim that the increased expense was to be borne by the claimant as work required by the contract; nor does it appear that the claimant made any objection to the taking down of the walls as ordered by Commodore Hitchcock."

The appellee claimed compensation beyond the contract price

for the additional cost of construction rendered necessary by rebuilding that portion of the walls torn down by order of Commodore Hitchcock. The United States contended that it was covered by the terms of his contract.

*Mr. Assistant Attorney-General Maury*, for the appellant, cited *Garrison* v. *United States*, 7 Wall. 688; *Chicago* v. *Sheldon*, 9 Wall. 50, 54; *Lowber* v. *Bangs*, 2 Wall. 728, 737; *Hawkins* v. *United States*, 96 U. S. 689; and *Dale* v. *United States*, 14 Court Claims, 514.

*Mr. Enoch Totten*, for the appellee, cited *Dermott* v. *Jones*, 2 Wall. 1, 9, and the opinion of the court below in this case.

MR. JUSTICE MATTHEWS delivered the opinion of the court. After stating the facts as above, he continued:

In our opinion the court of claims committed no error in allowing the claim of the contractor.

The language of the specifications is, perhaps, susceptible of two meanings. According to one, it is as if it read that "the foundations and the brick walls now standing," *so far as they* "were uninjured by the fire, will remain;" according to the other, that "the foundations and brick walls now standing," *being such as* "were uninjured by the fire, will remain." But, without going into any refinements of merely verbal interpretation, we think the meaning of the parties, explained by the circumstances attending the transaction, is sufficiently plain, and determine satisfactorily their relative rights and obligations.

It must be conceded, we think, that it was intended that the old portion of the work was to remain as part of the new structure only so far as it was in fact fit to do so, having reference to the character and uses of the building, and that the United States had the right to determine the fact of fitness. It was clearly its interest to do so, in advance of bidding, because if it reserved the right to make the determination at any stage in the progress of the work, or even at the time of final acceptance on its completion, the whole risk of the contingency would be thrown upon the contractor, who could only indemnify himself by an increase in the estimate of probable cost;

and the government would thus be compelled to pay for an uncertainty which could as well be resolved in advance. The United States having a right to determine the fact, it would be reasonable, having regard merely to its own interests, to do so before letting the contract. It would be equally reasonable and just to the contractor that the decision should be made at the outset; and as the right to make it belongs to the proprietor, the duty follows to exercise it so that the contractor shall not be misled and injured.

Under the circumstances in the present case, and according to the terms of the specifications, we think it was the duty of the officers acting for the United States, the right performance of which the government assumed, to point out to the bidders the parts of the foundations and walls which were in fact so far uninjured as to enter into the new structure, and that this was actually done by dismantling and stripping the burnt building, so that upon inspection of what was left standing the proposing contractor would be able by measurement to ascertain precisely what new work he was to do and be paid for. To require him to determine the fact for himself provisionally, subject at any time before completion of the work to have his judgment reversed, and to be required in consequence to perform work which he could not and did not provide for in his estimates, would be unreasonable and unjust. The inspection invited by the advertisement was not for the purpose of assisting the contractor to determine subject to such a condition the question of the fitness of the standing walls to remain, but was, as we think, that he might see as part of the plan of the work what the authorized agents of the United States had designated as intended to remain in the permanent structure. It was the duty of the United States to point out the work deemed to be sufficiently uninjured to remain, and this was performed by allowing it to stand, and by not directing it to be taken down. We lay no stress, as the court of claims did not, on what was said at the time to that effect by unauthorized subordinates. The foundation and walls themselves, as left standing by authority of the proper officers, constituted under the circumstances a representation on the part of the

Opinion of the Court.

United States that they had been adjudged to be so far uninjured by fire that they were to remain, upon the faith of which the intending contractor was entitled to rely for the purpose of estimating the probable cost of the work to be done.

Judgment in favor of the appellee was rendered by the court of claims upon two other claims for small amounts, in respect to which we do not deem it necessary to say more than that it appears to us the allowance was proper. The defence by reason of the statute of limitations, also for the reasons alleged in the opinion of that court, was, in our opinion, properly overruled.

The judgment of the court of claims is accordingly

*Affirmed.*