Argued December 7, affirmed December 28, 1926, rehearing denied
January 25, 1927.

# A. JALOFF v. UNITED AUTO INDEMNITY EX-
## CHANGE ET AL.

### (250 Pac. 717.)

**Election of Remedies—Complaint Seeking Recovery on Policy of
Indemnity Insurance Held not to Attempt to Reform Contract,
and Did not Require Election of Remedies.**

1.   Complaint by owner of automobile bus line to recover, on
policy of indemnity insurance, amount he had paid for injury to
third person in collision with one of his cars, *held* not to attempt
to reform contract, though such car was not in list attached to
policy, and did not require election of remedies.

**Election of Remedies—Election of Remedies may be Invoked,
Where There are Two or More Inconsistent Coexisting Remedies
—"Inconsistent Causes of Action."**

2.   Doctrine of election of remedies may be invoked where there
are two or more inconsistent coexisting remedies; and "causes of
action are inconsistent" where one admits a fact and the other
denies it.

**Evidence—Parol Evidence is not Admissible to Vary Terms of
Clear and Explicit Insurance Contract (Or. L., § 713).**

3.   When insurance contract is clear and explicit, and contains
no latent ambiguity, parol evidence is not admissible to vary its
terms, in view of Section 713, Or. L.

**Evidence—Parol Evidence may be Admissible to Aid Court in
Giving Ambiguous Insurance Contract Proper Construction (Or.
L., § 717).**

4.   Where language of insurance contract is ambiguous, equivocal
or susceptible of conflicting interpretations, parol evidence may be
admissible to aid court in giving it proper construction, in view of
Section 717, Or. L.

**Insurance—Evidence Held to Show That Policy of Indemnity In-
surance was Blanket Policy, Covering All Cars Being Used by
Owner of Bus Line (Laws 1921 [Sp. Sess.], p. 37, § 6; Or. L.,
§ 721).**

5.   Evidence *held* to show that policy of indemnity insurance to
be construed with Laws of 1921 (Special Sess.) page 37, Section 6,
issued to owner of bus line, was blanket policy covering all cars
being used by insured, notwithstanding that list of cars which
insured "now owns" was attached to it, in view of Section 721,
Or. L.

2.   See 9 R. C. L. 958.

Insurance—Insurance Policy Should be Construed With Regard to Mutual Intent of Parties as Expressed in Words of Contract.

6.   Insurance policy must be so interpreted as to give effect to mutual intention of parties at time of contracting, so far as such intention can be deduced from language of policy.

Insurance—Insurer, Having Undertaken Defense of Suit for Insured, cannot Withdraw on Theory That It had Mistaken Nature of Obligation Under Policy.

7.   Under policy of indemnity insurance excluding insured from participation in defense or settlement of any claim against him, insurer cannot, after undertaking defense of suit, withdraw on theory that it had mistaken nature of obligation under policy.

Insurance—Ambiguous Insurance Policy Should be Construed Most Strongly in Favor of Insured.

8.   Where meaning of insurance policy is doubtful, and language is fairly susceptible of two constructions, it should be construed most strongly in favor of policy-holder.

Trial—Court must Determine All Issues, Where Both Plaintiff and Defendant Move for Directed Verdict in Law Action.

9.   Where plaintiff and defendant in law action each moved for directed verdict, it amounts to waiver of right to have questions of fact determined by jury and consent to have all issues of law and fact determined by court, and imposes on court duty to determine such issues.

Insurance—Evidence Held to Support Judgment for Bus Owner Against Insurance Company for Amount Recovered from Him by Person Injured in Collision.

10.   Evidence *held* to support judgment for owner of bus line in action against insurer on policy of indemnity insurance for amount of judgment recovered from plaintiff by persons injured in collision with one of his cars.

Election of Remedies, 20 C. J., p. 3, n. 3, p. 5, n. 34, p. 6, n. 54.
Evidence, 22 C. J., p. 1173, n. 40, p. 1177, n. 49, p. 1186, n. 95.
Insurance, 32 C. J., p. 1148, n. 47, p. 1149, n. 50, 52, 55, p. 1150, n. 59, 68, 70, p. 1152, n. 95.
Liability Insurance, 36 C. J., p. 1061, n. 97, 98, 1, p. 1062, n. 4, p. 1116, n. 93, 94, p. 1150, n. 70.
Trial, 38 Cyc., p. 1582, n. 70, p. 1583, n. 73.

From Multnomah: JOHN H. STEVENSON, Judge.

Department 2.

This is an appeal from a judgment for plaintiff in the sum of $7,386.14, arising out of a certain liability

---

7.   See 14 R. C. L. 925.
8.   See 14 R. C. L. 926.

insurance policy numbered 428, issued by defendants to plaintiff.

At the times mentioned in the complaint, the plaintiff was operating under the firm name and style of "Columbia Stages" in the transportation of passengers for hire by means of motor vehicles, over the Columbia Highway and elsewhere within the State of Oregon. The defendant United Auto Indemnity Exchange was an organization composed of individuals, partnerships and corporations, authorized to exchange reciprocal or inter-insurance contracts, and the defendant United Underwriters, Inc., was an Oregan corporation and the duly constituted attorney-in-fact for the United Auto Indemnity Exchange.

Policy number 428 bears the following indorsement:

"The policy to which this indorsement is attached is written in pursuance of and is to be construed in accordance with Chapter 10, General Laws of Oregon, Special Session 1921, and acts amendatory thereof and supplemental thereto, and the rules and regulations of the Public Service Commission of Oregon adopted thereunder, and the insurer agrees to indemnify the insured for loss sustained on account of injuries to persons, and loss of or damage to property in accordance with the terms of the above statute."

Section 6 of Chapter 10, General Laws of Oregon, Special Session of 1921, provides:

"No transportation company shall, subsequent to the taking effect of this act, operate any motor vehicle, * * for the transportation of persons, * * without having first filed with the Public Service Commission of Oregon a good and sufficient bond with surety or sureties and conditions satisfactory to the Public Service Commission, or liability insurance in such a penal sum as the Public Service Commission

may deem necessary to adequately protect the interests of the public, with due regard to the number of persons and amount of property involved, which surety bond or liability insurance shall bind the obligors thereunder to make compensation for injuries to persons and loss of or damage to property resulting from the operation of such vehicles * * ."

Clause A of policy number 428 insures the plaintiff against loss by reason of liability imposed by law resulting directly from the ownership, manipulation or use of motor vehicles operated upon the highways for the transportation of passengers. Among other things, the policy provides:

The Insurer agrees to defend "in the name and on behalf of the Subscriber any suit brought against the Subscriber to enforce a claim covered by Clause A of this policy, WHETHER GROUNDLESS OR NOT, for damages on account of bodily injury or death suffered, or alleged to have been suffered, by any person or persons under the circumstances described in Clause A of this policy and resulting from an accident occurring during the period this policy is in force; and further to defend in the name and on behalf of the Subscriber any suit brought against the Subscriber to enforce a claim covered by Clause B of this policy, whether groundless or not."

Relating to notice of accident, we quote the following provision:

"Upon the occurrence of an accident covered by this policy, the Subscriber shall give immediate written notice thereof to the Exchange and shall forward to the Exchange forthwith after receipt thereof every written communication, or information as to any oral communication, and every process, pleading and paper of any kind relating to any and all claims and proceedings."

Under the policy, the Exchange reserves the right to settle any claim or suit, and the Subscriber shall not assume any liability or interfere in any negotiation or legal proceedings conducted by the Exchange on account of any claim, except that he may incur expense for such immediate surgical relief as shall be imperative at the time of the accident.

As to actions against the Exchange, the policy provides:

"No action shall lie against the Exchange to recover for any loss and/or expense under this policy unless it shall be brought by the Subscriber for loss and/or expense actually sustained and paid in money by him after actual trial of the issue * * ."

Liability under the policy is limited to $5,000 for injury to any one person, and to $15,000 for any one accident involving injury to several persons.

Plaintiff asserts that, on August 17, 1924, a motor vehicle then owned and operated by the plaintiff as a stage in carrying passengers for hire on the Columbia Highway collided at a point near Cascade Locks with an automobile driven by one C. A. Wells, who was accompanied by his wife, Dorothy Wells, three children, and another passenger; that, as a result of the collision, Dorothy Wells and other passengers therein sustained personal injuries; that, pursuant to the provisions of insurance policy number 428, immediately after the collision the plaintiff gave notice thereof to the defendants, and thereafter forwarded to them all information and communications, and every pleading and process and paper, and all other matters and things relating to the accident; that these defendants at once took charge of the investigation involving the accident and retained entire charge and control

120 Or.—25

thereof; that Dorothy Wells made claim upon plaintiff for damages resulting from the collision and brought an action for such damages sustained by her; that that action was defended by the defendants, and that a verdict was returned in her favor in the sum of $4,000. Plaintiff alleges that the defendants then abandoned further defense of the case and repudiated all obligations under the policy, and that the judgment was paid by the plaintiff prior to the commencement of this action.

For a second cause of action, the plaintiff alleged much of the matter contained in the first, and asserted that Merwin Wells, a minor, by his guardian *ad litem,* Dorothy Wells, made claim upon the plaintiff for damages resulting from the collision; that the defendants undertook the defense of the case in accordance with the terms of the insurance policy hereinbefore referred to; that the cause had been set down for trial immediately following the trial of the case of Dorothy Wells, but that, when the jury returned into court the verdict against plaintiff and in favor of Dorothy Wells in the sum of $4,000, the defendants informed this plaintiff that they would refuse to carry on or conduct the defense of the second action, for the reason that the contract of insurance did not cover the car known in this proceeding as Car Number 48, the car that collided with the Wells automobile.

The answer filed herein by the defendants, which is very lengthy, sets up the defense that the insurance policy sued upon does not cover plaintiff's motor vehicle number 48.

At the conclusion of the trial of plaintiff's case, both parties moved for a directed verdict. The court denied the defendants' motion and directed the jury

to return a verdict for plaintiff in the sum hereinbefore set down. The defendants, appealing to this court, rely upon the alleged errors referred to hereinafter.                                    AFFIRMED.

For appellants there was a brief and oral arguments by *Mr. Barnett H. Goldstein* and *Mr. Thomas Mannix.*

For respondent there was a brief over the name of *Messrs. Clark, Skulason & Clark* and *Mr. S. B. Weinstein,* with oral arguments by *Mr. Alfred E. Clark* and *Mr. S. B. Weinstein.*

BROWN, J.—1, 2. Defendants first raise this question: Was plaintiff required to make an election of remedies? That question must be answered in the negative. The doctrine of election of remedies may be invoked where there are two or more coexisting remedies which are inconsistent with each other, so that the pursuit of one necessarily implies the negation of the other: 9 R. C. L., p. 958; 20 C. J., p. 2. Causes of action, like defenses thereto, "are inconsistent when one of them admits a fact, and the other denies the same fact." *Peters* v. *Queen City Ins. Co.,* 63 Or. 382 (126 Pac. 1005).

The defendants contend that plaintiff's complaint attempts to state an action at law for the breach of a contract and a suit in equity for the reformation thereof. In this the defendants are in error. The complaint in no wise attempts to reform the contract.

3, 4. Defendants next claim that the court erred in permitting the introduction of parol evidence to vary the terms of the contract of insurance. The testimony was admitted, not to vary the contract, but to establish the common intent of the parties thereto.

When an insurance contract is clear and explicit and contains no latent ambiguity, parol evidence is not admissible to vary its terms: Or. L., § 713; *Edgar* v. *Golden,* 36 Or. 448 (48 Pac. 1118); *Hilgar* v. *Miller,* 42 Or. 552 (72 Pac. 319); *Sutherlin* v. *Bloomer,* 50 Or. 398 (93 Pac. 135). However, where the language of a written instrument is ambiguous, equivocal or susceptible of conflicting interpretations, parol evidence may be admissible for the purpose of aiding the court in giving the instrument a proper construction: Or. L., § 717.

5. The following question is submitted by defendants: Was the policy a specific or a blanket policy, and if a specific policy, was car number 48 covered thereby? This is the pivotal point in the case. The trial court found that the policy was a blanket policy. The parties to the contract treated it as a blanket policy. Car number 48 is not specifically mentioned in that policy. However, the policy purports to insure "all cars owned and/or operated by assured." That car was owned and operated by assured, and defendants, knowing this to be true, accepted and retained premiums for insurance in accord with the terms expressed in the policy. As showing the circumstances under which the policy was written and delivered, the following communication from a representative of the insurer, and written at its direction, is illuminating:

"As you know, we have made arrangements through Mr. Friedman of the United Underwriters of this city to cover your entire operations at the expiration date of the above mentioned, so that you will be fully protected to the extent of $5,000 to injury to one person in any one accident, and up to $15,000 to injury to more than one person in any one accident.

"This will be applicable to all cars that you now own or operate, as well as any car or cars which you may hereafter add to your equipment from time to time.

"This letter will serve as a binder pending the issuance and delivery to the Public Service Commission of Oregon the policy and a copy thereof to yourself."

Contemporaneous with the issuance and delivery of the policy, one of the representatives of the insurer transmitted to plaintiff, on behalf of the insurance company, a copy of policy number 428, the policy sued upon, and wrote plaintiff that the original policy had been mailed to the Public Service Commission. From this communication we carve the following language:

"Under the terms of this policy your entire operations are covered against liability and property damage for all cars you now own or may hereafter own, as well as any additional cars while not owned but which you may use in connection with your stage business."

Attached to the policy was a "schedule of cars now owned." Car number 48 was not included in that list. Respondent carried two policies of insurance with the defendants, i. e., policy number 302 and policy number 428. Policy number 302 is a fire and collision policy, issued for the protection of plaintiff's property. Policy number 428 is what is generally known as a liability insurance policy, as distinguished from the fire and collision policy number 302. Policy number 302 was issued in response to a written application made therefor on March 15, 1924. Policy number 428 was not issued as result of a written application.

Prior to the issuance of policy number 428, the plaintiff had carried public liability insurance under a blanket policy with the Auto Inter-Insurance Asso-

ciation of Seattle, which covered, on a mileage basis, all the cars owned or operated by this plaintiff. That policy expired May 12, 1924, and on its expiration, United Auto Indemnity Exchange issued to plaintiff policy number 428, the foundation of this action, which undertakes to indemnify the plaintiff against liability arising from certain accidental injuries as set forth therein, for the consideration of $220 for each 73,000 miles traveled, or about 60 cents for each 200 miles traveled by any car. The value of the cars did not affect this policy. No risk attached when the cars were idle. The policy insured plaintiff against the infliction of certain accidental injuries resulting from his manipulation and use of motor cars in the business described in the policy. Each month while the policy was in force, the plaintiff reported to the company issuing that insurance contract the number of miles traveled by his cars. In June, 1924, plaintiff furnished the insurer with a list of cars operated in his business during the month of May, together with the mileage made by each car. In this report, the mileage made by car number 48 was set out, and plaintiff transmitted to the insurer the premium covering this car under policy number 428, which premium the insurer accepted and retained. A like report of the mileage covered by car number 48 was made to the insurer in July and the premium paid, accepted and retained. The same thing happened in August. An additional circumstance pointing to the true situation is found in the fact that the insurer would, from time to time, go to the office of the plaintiff for the purpose of checking up the record, and that these records, as checked by the insurer, disclosed the operation of car number 48 by plaintiff and the payment of pre-

miums to the insurer for insurance on that car.   So it will be seen that the insurer and the insured treated the policy as covering car number 48.   It was their contract, and they had a lawful right to put their own construction thereon.

6. An insurance policy must be so interpreted as to give effect to the mutual intention of the parties at the time of contracting, so far as such intention can be deduced from the language of the policy.   In other words, it should be construed with regard to the intent of the insured and of the insurer as expressed in the words of the contract.   The policy in the case at bar by pertinent language expressly protects the plaintiff as a public carrier, while engaged in the manipulation of "all cars owned or operated by assured" in his business as such carrier.   Car number 48 was used upon the highway by plaintiff as a public carrier of passengers, which fact, as shown by the evidence, the defendants well knew.   However, the attached schedule or list of cars that plaintiff "now owns" ("now" referring to the date of the contract), in the mind of the writer creates some ambiguity in the expressed intention of the parties, making doubly clear the requirement for an application of the wholesome provisions of Section 717, Or. L., which says:

"For the proper construction of an instrument, the circumstances under which it was made, including the situation of the subject of the instrument, and of the parties to it, may also be shown, so that the judge be placed in the position of those whose language he is to interpret."

The undisputed evidence relating to the circumstances surrounding the making of the insurance contract shows that it was written as a substitute for a

former blanket policy, and that the list of cars attached to policy number 428 was made only for the purpose of disclosing to the Public Service Commission the extent of plaintiff's business as a public carrier at the time the policy was written.

Again, as to the interpretation to be placed upon this contract, the case of *St. Louis Gas Light Co.* v. *St. Louis,* 46 Mo. 121, is precisely in point. In that case the court discussed the question fully, and in a clearly reasoned opinion said:

"In a case of that kind, whose interpretation should prevail? If the court gives one differing from that understood by the parties, it * * makes a new agreement—the very thing most to be avoided. If it leaves the parties to be governed by their understanding of their own language, it, in effect, enforces the contract as actually made. That they should be so permitted to construe their own agreement accords with every principle of reason and justice."

To the same effect are *Fuller Bros. Toll Lbr. & Box Co.* v. *Fidelity & Cas. Co.,* 94 Mo. App. 490 (68 S. W. 222); *Fullerton* v. *United States Casualty Co.,* 184 Iowa, 219 (167 N. W. 700, 6 A. L. R. 367). See, also, Or. L., § 721; *Loomis* v. *McFarlane,* 50 Or. 129 (91 Pac. 466); *Harlow* v. *Oregonian Pub. Co.,* 53 Or. 272 (100 Pac. 7).

7. A fair and just statement of the law governing defense of a suit against the insured under a policy which precludes insured from interfering with any negotiations for settlement, or from participating in the defense of actions arising out of claims covered thereby, is laid down in Berry, Automobiles (5 ed.), § 1898, in language following:

"Under a policy of insurance which excludes the assured from participation in the defense or settlement of any claim against him, the insurer cannot,

after * * undertaking the defense of a suit on other claims, withdraw from the defense and cast the burden thereof on the assured on the theory that it had mistaken the nature of its obligation under the policy.''

Cases cited in support of the text are: *Fullerton* v. *United States Cas. Co.*, 184 Iowa, 219 (167 N. W. 700, 6 A. L. R. 367); *Fuller Bros. T. L. & B. Co.* v. *Fidelity & Cas. Co.*, 94 Mo. App. 490 (68 S. W. 222); *Sanders* v. *Frankfort M. A. & P. G. Ins. Co.*, 72 N. H. 485 (57 Atl. 655, 101 Am. St. Rep. 688); *Lombard* v. *Maguire-Penniman Co.*, 78 N. H. 110 (97 Atl. 892).

In *Lombard* v. *Maguire-Penniman Co.*, *supra*, it was held that an insurer against liability for negligence who undertakes the defense of an action against his insured cannot thereafter be discharged except by payment of the indemnity to the assured or by securing his discharge from the claim. See, also, *Sanders* v. *Frankfort M. A. & P. G. Ins. Co.*, *supra*.

8. It is a rule of general application in the construction of contracts that, where the meaning of an insurance policy is doubtful and its language is fairly susceptible of two constructions, one in favor of the insurance company and the other in favor of the assured, the contract should be construed most strongly in favor of the policy-holder: *Fenton* v. *Fidelity & Casualty Co.*, 36 Or. 283 (56 Pac. 1096, 48 L. R. A. 770); *Stringham* v. *Mutual Ins. Co.*, 44 Or. 447 (75 Pac. 822); *Stinchcombe* v. *New York Life Ins. Co.*, 46 Or. 316 (80 Pac. 213); *Moore* v. *Aetna Life Ins. Co.*, 75 Or. 47 (146 Pac. 151, Ann. Cas. 1917B, 1005, L. R. A. 1915D, 264).

9. We have alluded to the fact that, at the conclusion of the reception of plaintiff's evidence, both the defendants and the plaintiff moved for a directed verdict, and that the court denied the defendants'

motion and directed a verdict in favor of the plaintiff. The defendants now challenge the authority of the court to direct a verdict in favor of the plaintiff on the ground that questions of fact were involved which should have been passed upon by the jury. That ·point has been before this court a number of times, and its ruling is reviewed in the recent case of *Hudelson* v. *Sanders-Swafford Co.*, 111 Or. 600 (227 Pac. 310), where Mr. Justice RAND, in speaking for the court, wrote:

"It is settled by the decisions of this court that, where the plaintiff and the defendant in an action at law each move for a directed verdict, it amounts to a waiver by the parties to the action of their right to have the questions of fact determined by the jury and a consent upon their part to have all issues of law and fact determined by the court, and imposes upon the court the duty to determine all such issues."

Then follows a collection of Oregon authorities.

10. We have before us a record showing that, on August 17, 1924, car number 48, while being operated by the plaintiff as a public carrier of passengers for hire, collided with an automobile driven by C. A. Wells, and that, as a result of such collision, a number of passengers in the Wells automobile sustained personal injuries; that the plaintiff immediately gave the defendants notice as required by the policy ·and forwarded to the defendants all information, process, pleadings and papers relating to the accident and the actions arising therefrom; that the defendants took immediate charge of the investigation of the facts relating to the collision and remained in charge and control thereof; that, during the investigation, they examined car number 48 and well knew that it was such car, and well knew from the former reports made by plaintiff, and by the numbers on the car,

that they were examining car number 48, and with this knowledge entered upon the defense of the cases referred to above. We have already, in our statement, alluded to the fact that two actions at law were instituted against the plaintiff on account of the collision; that the insurer, as a result of its investigations, filed an answer and entered upon the defense of each case, but, upon the return by the jury of a verdict of $4,000 in the case first tried, immediately deserted and abandoned the defense of the second case, i. e., the very day on which it was to be tried, .and long after its searching investigation of the facts involved in the collision and the liabilities of the parties hereto. In fact, this abandonment of plaintiff's defense came seven months after the happening of the accident. During these seven months, the defendants assumed full control and direction of the investigation of the facts and negotiations for settlement, and the defense of the actions at law; but, when the $4,000 verdict was returned into court, they suddenly discovered that car number 48 was not specifically mentioned in the policy of insurance and therefore not covered thereby. This, too, despite the fact that, during each month the plaintiff had operated car number 48 in his business, the company had knowingly accepted and retained insurance premiums covering its operation.

Each material allegation of the complaint in this case is supported by some competent evidence. A consideration of the entire record unquestionably shows that it was the mutual intention of the parties to cover car number 48 by insurance policy number 428. It follows that the case should be affirmed. It is so ordered.                     AFFIRMED.

McBRIDE, C. J., and BEAN and BELT, JJ., concur.