**UPPER COLUMBIA RIVER TOWING COMPANY, a corporation, Plaintiff,**

v.

**GLENS FALLS INSURANCE COMPANY, a corporation; Rodgers Insurance Agency, Inc., a corporation; Steamship Mutual Underwriters Association, Limited, a corporation; and Argonaut Underwriters Insurance Company, a corporation, Defendants.**

**Civ. No. 9897.**

United States District Court
D. Oregon.

Dec. 14, 1959.

Burda, Halstead & Cushman, The Dalles, Or., for plaintiff.

Mautz, Souther, Spaulding, Denecke & Kinsey, Portland, Or., for defendant Glens Falls Ins. Co.

McCarty, Swindells, Miller & McLaughlin, Portland, Or., for defendant Rodgers Insurance Agency, Inc.

Krause, Lindsay & Nahstoll, Portland, Or., for defendant Steamship Mut. Underwriters Ass'n, Limited.

Gray & Lister, Portland, Or., for defendant Argonaut Underwriters Ins. Co.

KILKENNY, District Judge.

One Vernon S. Taylor was an employee of plaintiff, Upper Columbia River Towing Company, a corporation. On June 7, 1955, Taylor was injured while aiding other crew members in removing cargo from a certain barge which the tug had towed to the Port of San Pedro, California. Taylor commenced an action against his employer in the Oregon State Circuit Court alleging negligence on the part of plaintiff. Plaintiff offered the defense of the action to the defendants Glens Falls Insurance Company, a corporation, Steamship Mutual Underwriters Association Limited, a corporation, and Argonaut Insurance Group, a corporation. The companies, individually, refused to accept the defense of the action. After some negotiations the plaintiff settled the pending litigation with Taylor for $4,500, and plaintiff then commenced this action against the three insurance companies and Rodgers Insurance Agency, a corporation. The complaint of Taylor against the plaintiff clearly shows that he was pursuing his remedy in said action under the Jones

Act, Title 46 U.S.C.A. § 688. The Rodgers Agency, at the time of the issuance of the insurance policies in question, was the local agent of the A. B. Knowles Company, which was the general agent of defendant Steamship Mutual Underwriters Association Limited, Taylor was a member of the crew of the Tug Winquatt at the time of the accident. One of his duties as a member of that crew was to assist in removing cargo from the barge, which was connected with and attached to the tug. Defendant Steamship Mutual concedes that its policy would cover any injury to Taylor which might have arisen out of his employment and which occurred on the tug, but contends that the policy would not cover the injury to Taylor sustained on the barge, even though the particular injury was covered by the Jones Act.

The testimony is clear and convincing that the Rodgers Agency intended to cover any and all liability of plaintiff, including complete coverage under the Jones Act. In order to properly construe the position of the respective parties under the provisions of the respective policies, we must place ourselves in the position of those parties at the time the Rodgers Agency agreed to such coverage. Since there was a direct agreement to cover the particular injury involved, we must look to the position of the parties and the language of the policies to determine which policy covered or was intended to cover this particular type of liability.

The policy issued by defendant Glens Falls Insurance Company expressly excludes any liability under the Jones Act. The policy contains a positive declaration that the *insurance* is void if the insured did not carry insurance under the Jones Act, and Federal Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C.A. § 901 et seq. and the California, Oregon and Washington Workmen's Compensation Acts, West's Ann.Cal.Labor Code, § 3201 et seq.; ORS 656.002 et seq.; RCW 51.04.010 et seq. The risk involved in Taylor's action against the plaintiff was not covered by the policy of insurance of the Glens Falls Insurance Company.

Likewise, the policy of the defendant Argonaut Underwriters Insurance Company does not cover the risk involved. The coverage of said company on the date of the injury to Taylor was limited to liability under the Longshoremen's and Harbor Workers' Compensation Act arising out of operations in the territorial waters of the State of Oregon. Even though I should find, which I do not, that Taylor was not a member of a crew of a vessel, there could be no recovery under the policy of the Argonaut. The testimony is undisputed that this accident occurred in the territorial waters of the State of California. The fact that Taylor was a member of the crew of a vessel, which is one of my findings, is an additional reason why the coverage provided by the Argonaut policy does not extend to the injuries received by Taylor.

■■■ The policy issued by the defendant Steamship Mutual is one which is commonly known as a P & I policy, the letters standing for "Protection & Indemnity." The policy of the Steamship Mutual specifically covers and describes the members of the crew of the Tug Winquatt and uses language which clearly shows that the insured was covered for any liability to a member of the crew under the Jones Act. Defendant Steamship Mutual contends that since there was no specific description or mention of the barge in the policy, that the provisions of the policy did not cover Taylor, even though Taylor was working as a member of the crew of the tug on the barge at the time of his injury. The testimony is uncontradicted that assisting in the unloading of the barge was part of the towage operation and that such assistance was one of the duties of the crew members. These facts were known to the Rodgers Insurance Agency and knowledge thereof would be imputed to the Steamship Mutual through its general agency, the A. B. Knowles Company. The language used in the policy must be defined and construed in the light of the known facts. I am of the

opinion that we can well look to the exclusions in the policy in order to determine what the parties intended to include. The policy of the Steamship Mutual provided:

"Notwithstanding anything to the contrary contained in this certificate, no liability attaches to the Assurer directly or indirectly:

\* \* \* \* \* \*

"For any loss, damage, expense or claim arising out of or having relation to the towage of any other vessel or craft, whether under agreement or not, unless such towage was to assist such other vessel or craft in distress to a port or place of safety, provided, however, that this clause shall not apply to claims under this certificate for loss of life or personal injury to passengers and/or members of the crew of the vessel named herein arising as a result of towing."

The testimony in this case conclusively shows that the work which Taylor was performing at the time of his injury was an integral part of his duties as a crew member and of the towing operation. A somewhat similar legal question was presented in Crain Bros., Inc. v. Hartford Fire Insurance Co., D.C., 149 F.Supp. 663, 665. In that case the United States District Court for the Western District of Pennsylvania held that the negligence of the tug's crew members in tying up the barges at the termination of the voyage would fall within the language "result of towage" as used in the policy, and that in such case, the company would not be liable. By the same process of reasoning, the negligence of the plaintiff in this case, as alleged in Taylor's complaint against plaintiff, would be covered by the terms and conditions of the "Notwithstanding" provisions of the policy above mentioned. I have no doubt but that the Jones Act would apply to the factual background of Taylor's claim against the plaintiff. The fact that the crew member was performing a service on the barge, which was an integral part of the whole towing operation, does not prevent the application of the Act. Wilkes v. Mississippi River Sand & Gravel Co., 6 Cir., 1953, 202 F.2d 383, 386; Maryland Casualty Co. v. Lawson, 5 Cir., 1938, 94 F.2d 190. Counsel for Steamship Mutual say that the Lawson case is not in point. I think otherwise. The liberal definition of the word "crew" which was the basis of the decision in the Lawson case is cited with approval by the United States Supreme Court in Norton v. Warner Co., 321 U.S. 565, 573, 64 S.Ct. 747, 88 L.Ed. 430, and in Wilkes v. Mississippi River Sand & Gravel Co., 6 Cir., 1953, 202 F.2d 383. It must be constantly kept in mind that suits brought under the Jones Act and the facts found must be viewed in the light of the requirements of that remedial statute, the legislative history of which discloses the Congressional intent that it be liberally construed. Wilkes v. Mississippi River Sand & Gravel Co., supra; Carumbo v. Cape Cod S. S. Co., 1 Cir., 1941, 123 F.2d 991, 995.

In the light of the testimony in this case, it could well be argued that the language "result of towing" in the "Notwithstanding" clause of the Steamship Mutual policy is ambiguous. In such case, evidence of the intention of the parties is clearly admissible and does not violate the parole evidence rule. ORS [1] 42.220; Queen Insurance Co. of America v. Meyer Milling Co., 8 Cir., 1930, 43 F.2d 885; East & West Insurance Co. of New Haven, Conn. v. Fidel, 10 Cir., 1931, 49 F.2d 35; West Portland Homestead Ass'n v. Lownsdale, D. C., 17 F. 614; Jaloff v. United Auto Indemnity Exchange, 120 Or. 381, 250 P. 717.

Every contract includes such implied provisions as are indispensible to effectuate the intention of the parties. Sacramento Navigation Co. v. Salz, 273 U.S. 326, 47 S.Ct. 368, 71 L. Ed. 663; Delaware & Hudson Canal Co. v. Pennsylvania Coal Co., 8 Wall. 276, 75

1. Oregon Revised Statutes.

U.S. 276, 19 L.Ed. 349; Northeast Clackamas County Electric Co-operative v. Continental Casualty Co., 9 Cir., 1955, 221 F.2d 329; Stern v. Dunlap Co., 10 Cir., 1955, 228 F.2d 939. The courts should look to the surrounding circumstances, to the situation of the parties and the subject matter of the contract for aid in giving a construction to its language. Starr v. Stark, C.C.1874, Fed. Cas.No.13,317, 2 Sawy. 603, 642; United States v. Gibbons, 109 U.S. 200, 3 S.Ct. 117, 27 L.Ed. 906.

It is conceded that plaintiff's settlement with Taylor was made in good faith. Therefore, plaintiff is entitled to recover from defendant Steamship Mutual Underwriters Association Limited, a corporation, the amount of such settlement, the plaintiff's costs, and a reasonable attorney fee, which the Court fixes at $850.